Chrysanthe SANNERUD, Appellant
(Defendant & Third–Party
Plaintiff),

v.

Paul E. BRANTZ, Appellee (Plaintiff),

and

Paul M. Brantz and Betty J. Brantz,
Appellees (Third–Party
Defendants).

No. 93–192.

Supreme Court of Wyoming.

Aug. 2, 1994.

Rehearing Denied Aug. 25, 1994.

Stephen R. Winship, Donald R. Winship & Associates, P.C., Casper, for appellant.

Michael D. Zwickl, Casper, for appellees.

Before GOLDEN, C.J., THOMAS, MACY and TAYLOR, JJ., and CARDINE, J. (RET.)

MACY, Justice.

Appellant Chrysanthe Sannerud appeals from an order which quieted the title to real property owned by Appellee Paul E. Brantz (the son), from an order which denied Sannerud's motion for a summary judgment on her complaint and the third-party defendants' counterclaim, and from an order which entered a judgment against Sannerud for slandering the son's title to real property upon which a motel and cafe were located and which denied Sannerud's claim against Appellees Paul M. Brantz and Betty J. Brantz (the Brantzes) for payment of a promissory note.

We affirm in part and reverse in part.

Sannerud presents nine issues:

1. Whether humiliation, mental anguish and emotional distress constitute actual or

special damages sufficient for judgment on slander of title.

2. Whether actual malice on the part of the Appellant was proven with convincing clarity.

3. Whether Appellant's foreclosure notice was sufficiently false to be adjudged slanderous.

4. Whether, in view of the manner and circumstances surrounding the transfer of title to the affected property to Appellee from his parents, Appellee possessed sufficient interest in the property affected to allow him standing to bring his slander of title action.

5. Whether the lower court erred in considering extrinsic evidence on the sufficiency of the consideration of the note to Appellant from Appellees.

6. Whether there was a failure of consideration underlying the Note to Appellant from Appellees.

7. Whether the transfer of the Red & White Motel and Cafe to Appellee from his parents is subject to Wyoming's fraudulent conveyance and "bulk transfer" statutes.

8. Whether the lower court erred in granting Appellee's "quiet title" motion for summary judgment.

9. Whether the lower court erred in denying Appellant's Motion to Dismiss at the close of Appellee's case.

The Brantzes signed a real estate broker's contract on April 8, 1982, which authorized Sannerud, a licensed real estate broker, to list for sale the J & E Motel, Restaurant, and Trailer Court which was located in Sheridan, Wyoming (the Sheridan property). Sannerud produced buyers who agreed to purchase the property. The Brantzes and the buyers entered into a purchase agreement, and they signed the sales contract which provided that the buyers would make a down payment and monthly payments thereafter. Sannerud gave the Brantzes a $25,000 cashier's check to apply toward a debt which the Brantzes owed to the Small Business Administration so that the mortgage securing the debt would not be a cloud on the title to the property. The Brantzes agreed to give Sannerud a $25,000 bonus in addition to her regular commission for obtaining a sale price of $950,000 for the property. The Brantzes executed a $50,000 promissory note made payable to Sannerud, presumably for the $25,000 bonus and the $25,000 cashier's check. The buyers delivered the down payment and made four monthly payments but failed to make the remainder of the monthly payments. The Brantzes regained possession of the Sheridan property.

On January 31, 1986, Sannerud recorded a "Lien Statement" in the Natrona County clerk's office in an attempt to protect her interest in the promissory note, stating that the Brantzes failed to pay for the "services and cash" which she had provided to them. Because Sannerud understood that the Brantzes had lost the Sheridan property, she claimed a lien against real property located in Casper, Wyoming, which was owned by the Brantzes and which was known as the Red and White Motel and Cafe (the Casper property). In December 1989, the Brantzes deeded the Casper property to the son.

Sannerud purported to foreclose her lien on the Casper property by publishing notice in February 1991 of a foreclosure sale. On March 5, 1991, a foreclosure sale was held on the Natrona County courthouse steps, and Sannerud successfully bid $151,162.42 for the Casper property. The Natrona County sheriff issued a sheriff's deed on July 10, 1991, purporting to convey the Casper property to Sannerud. After she obtained the sheriff's deed, Sannerud went to the cafe located on the Casper property and asked the son to surrender his keys and leave. The son did not leave. She served a "Notice to Quit, Leave and Vacate" on the son on July 15, 1991, in the presence of customers at the Casper property. On July 19, 1991, Sannerud filed a civil complaint, claiming that the son was "not the lawful property owner." The Natrona County Court dismissed that complaint.

The son filed a complaint in the district court on July 24, 1991, to quiet his title in the Casper property and prayed for damages, including punitive damages, for slander of title. Sannerud filed a counterclaim, seeking to set aside the conveyance of the Casper property from the Brantzes to the son, alleg-

ing that the conveyance had been made to hinder, delay, and defraud her as a creditor. She also filed a third-party complaint against the Brantzes, seeking a judgment against them in the amount of $50,000 plus interest for nonpayment of the promissory note which had been executed as a part of the Sheridan property sale. Sannerud later amended her counterclaim to include a count in which she alleged that the Brantzes had violated the " 'Bulk Sales' Act then in force."

The district court granted a partial summary judgment in favor of the son which declared that the sheriff's deed for the Casper property was void and which quieted the son's title in that property. The district court denied Sannerud's motion for a summary judgment on her complaint and on the third-party defendants' counterclaim. After a bench trial, the district court ruled that Sannerud was answerable in damages for slander of title and entered a judgment against her and in favor of the son in the amount of $5,000 to compensate him for his emotional distress, mental anguish, and humiliation resulting from Sannerud's unwarranted actions. The district court also ruled that the $50,000 promissory note was unenforceable and that Sannerud's fraudulent conveyance and bulk transfer claims were moot.

Sannerud claims that she was entitled to receive payment on the $50,000 promissory note because she had fulfilled her obligations relating to the sale of the Sheridan property. The Brantzes contend, however, that Sannerud did not provide "qualified buyers," which was a condition precedent to their promise to pay the $50,000 promissory note.

A condition precedent is defined as " 'an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises.' " *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County, Wyoming*, 681 P.2d 1326, 1331 (Wyo.1984) (quoting Calamari & Perillo, *The Law of Contracts* § 11-3 (1977)).

*Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.*, 803 P.2d 366, 368 (Wyo.

1990), *after remand*, 818 P.2d 1137 (Wyo. 1991).

The promissory note in this case stated in part:

For value received I/we promise to pay to the order of Chrysanthe Sannerud ... the sum of Fifty Thousand no/100 Dollars with interest at the rate of 10% per annum until paid. The said amount to be paid in 84 consecutive installments of $830.00 each ... beginning June 1, 1982. ...

The escrow instructions provided in pertinent part:

Funds paid ... by Buyers are to be applied by the Escrow Agent as follows:

. . . .

(c) Of funds received monthly, the sum of $830.00 is to be paid to the credit of Chrysanthe Sannerud. ... The payments are to be made until a promissory note payable to the order of Chrysanthe Sannerud for the sum of $50,000.00 with interest at the rate of 10% per annum is paid in full.

▄ Sannerud argues that the promissory note was clear and unambiguous and that the escrow instructions should not have been considered in determining the parties' intent when they executed the promissory note. The Brantzes assert that the consideration of parol evidence by the trial court was proper because the evidence did not vary the terms of the promissory note. We agree.

"[P]arol evidence is admissible to show that a contract fully executed and delivered is not to be effective, unless and until[ ] some condition, extraneous to the terms of the contract, has been complied with ... the rule is equally well established that the parol condition may not be shown if it is contrary to the terms of the written executed contract."

*North American Uranium, Inc. v. Johnston*, 77 Wyo. 332, 354, 316 P.2d 325 (1957) (quoting *L.B. Williams Organization v. Winter*, 106 Cal.App.2d 604, 235 P.2d 407, 408 (1951)). " ' "The question usually is as to whether the parol evidence sought to be introduced contradicts or alters the written contract, or leaves it to stand unchanged and simply tends to establish an additional collateral

agreement." ' "  77 Wyo. at 352–53, 316 P.2d 325 (quoting *Denman v. Hall,* 144 Tex. 633, 193 S.W.2d 515, 516 (1946)).

■ Here, the promissory note did not describe how the payments were to be made to Sannerud. By declaring that the payments to Sannerud would be made through the escrow agent, the escrow instructions supplied a term which was extraneous to the promissory note terms. The promissory note did not expressly provide that all the agreements intended by the parties were included. *Cf. Hollabaugh v. Kolbet,* 604 P.2d 1359, 1362 (Wyo.1980) (parol evidence inadmissible when contract for sale "provide[d] that it include[d] all agreements intended by the parties"). The escrow instructions were not inconsistent with the promissory note terms. They described the same payments, principal amount, interest rate, and payee as were described by the promissory note. The promissory note and the escrow instructions, when they are considered together, are clear and unambiguous. *See Kilmer v. Citicorp Mortgage, Inc.,* 860 P.2d 1165, 1167 (Wyo. 1993) (language of various agreements involved in a transaction was clear and unambiguous). The district court correctly considered the language contained in the escrow instructions together with the language contained in the promissory note.

■ The district court stated in its decision letter:

This provision [in the escrow instructions] would suggest that Sannerud would be paid from the proceeds of the payments by buyers, and that if the buyers were incapable of completing sufficient payments to cover the promissory note taken in consideration of the sale [it] would not have to be paid. That interpretation is the only one that makes any sense in the whole transaction.

We agree with the district court. We hold that the buyers were not "qualified buyers" because they were incapable of making sufficient payments and that the Brantzes did not have a duty to pay the promissory note.

Because we hold that the Brantzes did not have a duty to pay the $50,000 promissory note, we do not need to consider Sannerud's remaining claims concerning the promissory note.

Sannerud contends that there was insufficient evidence on the slander of title claim to prove that the son incurred any pecuniary loss.

The standard for reviewing the sufficiency of the evidence is well established. On review, this court assumes that the evidence in favor of the successful party is true. We leave out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the evidence of the successful party, and we afford to the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it.

*Kadrmas v. Valley West Homeowner's Association,* 848 P.2d 826, 828 (Wyo.1993) (citation omitted).

■ " 'Slander of title' is defined as a false and malicious statement made in disparagement of a person's title to real or personal property, or of some right of his causing him special damage." *Bennett v. Pace,* 731 P.2d 33, 34 (Wyo.1987).

In order to sustain an action for disparagement of another's property or title, it is necessary to show damages. *Diefenderfer v. Totman,* 73 Wyo. 409, 280 P.2d 284 (1955), followed in *Brennan v. Laramie Newspapers, Inc.,* Wyo., 493 P.2d 1044 (1972). See also, Restatement, Torts 2d §§ 624–632, comment b; § 632 explicitly requires p[ ]ecuniary loss in order to complete the cause of action.

*Cates v. Barb,* 650 P.2d 1159, 1161 (Wyo. 1982) (emphasis added).

■ The son claimed that he lost approximately $12,000 in revenue because of Sannerud's actions. His testimony was the only evidence which was presented concerning his financial losses:

Q. Have you identified any financial loss that you suffered that you can identify with this lien foreclosure action, and you said, yes; and then how did you make this determination?

A. Well, there is the lawyer's fees I have had to pay all along since this has

began. I figured that I have lost about 12,000 in business.

Q. How do you figure that?

A. Based on my tax returns. The first year I was here I improved business by 6,000 and then when this began, that year I only improved business by about 2,000, so I figure this litigation has cost me 4,000 for that year. And then I am assuming that this year I'll lose another 4,000 based on what I figured I lost the year before.

No evidence was presented which indicated that the business would have improved more than it did in the year of the foreclosure sale if a foreclosure sale had not occurred. The pecuniary loss evidence was, therefore, speculative. "Damages must be proven with a reasonable degree of certainty, and a court may not resort to speculation or conjecture in determining the proper amount to award." *Cottonwood Valley Ranch, Inc. v. Roberts,* 874 P.2d 897 (Wyo.1994). "A claim for lost future profits must be based on 'the best proof available as to the amount of loss.'" *State Surety Company v. Lamb Construction Company,* 625 P.2d 184, 193 (Wyo. 1981) (quoting *Wyoming Bancorporation v. Bonham,* 563 P.2d 1382, 1385 (Wyo.1977)).

The son claimed that he incurred attorney's fees in the approximate amount of $4,000. The district court concluded that the son had failed to prove his attorney's fees "in a manner permitting judgment in that respect." *But cf. Barquin v. Hall Oil Co.,* 28 Wyo. 164, 171, 201 P. 352 (1921) (suggesting that attorney's fees are not recoverable in an action for defamation of title). The son also claimed that he had suffered emotional distress, but he did not present evidence of any pecuniary loss which was associated with his emotional distress. *See Cates,* 650 P.2d at 1161.

When we afford the son's evidence every favorable inference which may be reasonably and fairly drawn from it, we conclude that the son failed to produce sufficient evidence of pecuniary loss, which is an essential element of a slander of title cause of action. We, therefore, reverse the trial court's slander of title judgment.[1]

Because we hold that the son did not prove damages to support his slander of title claim, we do not need to consider Sannerud's remaining claims concerning slander of title.

Affirmed in part and reversed in part.

---

1. The district court did not award punitive damages. *See Cates,* 650 P.2d at 1161 ("If a plaintiff is not entitled to actual damages, he is not entitled to punitive damages").