44 P.3d 47 (2002)
2002 WY 54
Gloria J. CAPSHAW and Judy G. Capshaw, a/k/a JUDY G. Roesler, Appellants (Defendants),
v.
E. Tim SCHIECK; Diane E. Schieck; John D. Kerns; Allyson A. Kerns; and Rocky Mountain Cementers, Inc., Appellees (Plaintiffs).
No. 01-35.
Supreme Court of Wyoming.
April 10, 2002.
*48 Georg Jensen of the Law Offices of Georg Jensen, Cheyenne, WY, Representing Appellants.
David A. Drell of Vlastos, Brooks, Henley & Drell, P.C., Casper, WY, Representing Appellees.
Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.
*49 VOIGT, Justice.
[¶ 1] Gloria J. Capshaw and Judy G. Capshaw (the sellers) sold all of the shares in Rocky Mountain Cementers, Inc. (the corporation), a Wyoming corporation, to E. Tim Schieck, Diane E. Schieck, John D. Kerns, and Allyson A. Kerns (the buyers) on March 2, 1996. The buyers chose to purchase the corporation, rather than its assets, based on the corporation's July 31, 1994, tax return that showed a net operating loss (NOL) carry forward of $203,614.00.[1] The Internal Revenue Service (IRS) audited the corporation in 1998 for the 1994-1995 tax year. Based on this audit, the IRS disallowed certain deductions, which reduced the NOL carry forward.[2] The buyers requested indemnification from the sellers under the indemnification clause of the Stock Purchase Agreement for any damages resulting from the NOL carry forward reduction. When the sellers refused to indemnify the buyers, this lawsuit followed. The trial court conducted a trial in May 2000, and awarded the buyers judgment against the sellers in the amount of $32,160.75. The sellers appealed. We affirm, but remand for entry of a judgment consistent herewith.

ISSUES
[¶ 2] We will address the issues as they have been stated by the sellers as appellants:
1. May the court allow testimony regarding future profits without foundation, based on conjecture and speculation over the objection of the appellants for lack of foundation and best evidence?
2. May the court award a judgment for damages against the defendants based in part on losses claimed due to the filing of an incorrect or fraudulent tax return by the plaintiffs?
3. May the court award judgment for future damages for loss of future tax benefits when the plaintiff[s] put on no evidence regarding the amount of any future taxable income?

FACTS
[¶ 3] The buyers entered into a Stock Purchase Agreement with the sellers on February 20, 1996. Closing occurred on March 2, 1996, at which time the stock certificates were transferred to the buyers. The sellers sold all their stock in the corporation to the buyers for $250,000.00. Prior to the sale, the buyers inspected the corporation's financial records. The corporation's July 31, 1994, tax return reflected a NOL carry forward of $203,614.00. When the sellers confirmed that the corporation had the NOL carry forward, the buyers chose to purchase the corporation rather than its assets.
[¶ 4] The Stock Purchase Agreement provided, among other things:

1. PURCHASE PRICE.

The total purchase price for the sale and purchase of the stock and outstanding interests of Sellers in Rocky Mountain shall be Two Hundred Fifty Thousand Dollars ($250,000). The parties agree that this purchase price is tied to the financial condition of Rock Mountain as of January 31, 1996 as reflected by the financial records as of that date....
* * *

5. REPRESENTATIONS AND WARRANTIES.

Sellers represent and warrant as follows:
* * *
D. All books and records of the corporation have been supplied to the Purchasers for the purpose of entering into this transaction and said books and records are true and accurate. The financial statements *50 which have been provided to Purchasers are true and accurate and fairly represent the financial condition and operation of the corporation.. .
* * *

6. INDEMNITY.

Sellers shall indemnify the Purchasers and hold Purchasers harmless from and against any loss or damage occasioned by any act of the corporation, its officers, directors and stockholders, including attorney's fees and costs related to the same prior to March 1, 1996.
[¶ 5] In 1997, the IRS audited the corporation. It determined that improper classifications of payments had been made by the sellers prior to the February 20, 1996, Stock Purchase Agreement, and additional tax, interest, and penalties were owed that amounted to $7,713.66. The buyers paid this amount, and requested indemnification from the sellers. The sellers made full payment to the buyers on November 5, 1997.
[¶ 6] In April 1998, the IRS informed the buyers that it was conducting another audit of the corporation. As a result of the audit, the IRS disallowed many of the deductions made in the corporation's July 31, 1994, tax return, which disallowance reduced the NOL carry forward. The corporation's accountant testified at the trial that the deductions were disallowed because there were no supporting documents in the corporation's financial records to justify them.
[¶ 7] On April 21, 1998, the buyers requested that the sellers reimburse them for any damages sustained as a result of the NOL carry forward reduction. The sellers refused, and the buyers initiated this lawsuit on March 23, 1999. The buyers' Motion for Summary Judgment was heard at a final pretrial conference on May 19, 2000. The trial court found no genuine issue of material fact on the issue of indemnification, and granted partial summary judgment in favor of the buyers, finding the sellers liable for their breach of the agreement for indemnification of the tax loss. The trial court found genuine issues of material fact remained regarding the amount of damages due to the buyers, the buyers' duty to mitigate damages, and the sellers' counterclaims.
[¶ 8] The trial court conducted a trial on damages on May 30 and 31, 2000. A Final Order and Judgment filed October 9, 2000, granted the buyers judgment against the sellers in the amount of $32,160.75. The sellers appealed the Final Order and Judgment.

THE EVIDENTIARY RECORD
[¶ 9] The damages trial was not reported, so no transcript is available. Instead, the parties have, pursuant to W.R.A.P. 3.03, submitted a Statement of Proceedings. Because the nature and extent of the trial evidence is fundamental to this appeal, we will quote nearly verbatim the relevant portions of the Statement of Proceedings:
5. That Neal M. Johnson, CPA, the Plaintiff Rocky Mountain Cementers, Inc.'s accountant, testified that the Internal Revenue Service disallowed the following deductions from the Corporation's Form 1120 for the tax year ending July 31, 1995.

 Amount Disallowed:
 Officers' Compensation $ 9,600.00
 Repairs and maintenance $ 3,587.00
 Bad debt reduction $ 22,794.00
 Interest expense $ 15,000.00
 Depreciation expense $ 21,595.00
 Utility expense $ 6,000.00
 Costs of goods sold $ 84,592.00
 Non-employee compensation $ 9,500.00
 Wages $(12,035.00)
 _____________
 Total Adjustment: $ 160,633.00

Mr. Johnson testified that the basis for the disallowance of such deductions was the lack of any supporting documents for such deductions in the Corporation's financial records.
6. Neal Johnson, CPA testified that Rocky Mountain Cementers, Inc.'s 1996 tax return for the year ending July 31, 1997 reflected profit income of $88,346. That as the Corporation's accountant, he utilized $88,346 of the net operating loss carry forward to offset said income. Mr. Johnson testified that the 1997 tax return for the Corporation for the year ending July 31, 1998 reflected income of $176,692 of which he was only able [to] utilize $5,702 of net operating loss deduction due to the adjustments made by the Internal Revenue Service.

*51 7. That the Plaintiffs' expert, Richard Shamley, CPA, testified that the reduction of the loss carry forward resulted in a tax loss of $50,086. This testimony was based upon the manner in which the Plaintiff Rocky Mountain Cementers, Inc.'s prior accountant, Neal Johnson, CPA, had prepared the July 31, 1997 and July 31, 1998 tax returns.... In cross-examination, Mr. Shamley admitted that he would not have prepared the returns in the same manner and that he would have prepared the returns in accordance with the restrictions under IRC § 382 (26 U.S.C.S. 382) and he knew of no way in this case that the requirements of § 382 could be avoided. Mr. Shamley further testified that in reviewing the tax returns of the Corporation, that such returns showed that Rocky Mountain Cementers, Inc. had shown a profit three out of four years since the Stock Purchase Agreement. That the year the Corporation did show a loss, there was considerable equipment purchased. That based on the past profits, he would anticipate future profits for the Corporation wherein a net operating loss carry forward could be utilized.
[8.] That E. Tim Schieck and John D. Kerns, the president and vice president of Rocky Mountain Cementers, Inc., respectively testified that they fully expected the Corporation to make a profit in the future. That both testified for the current year, the Corporation had a net profit of approximately $110,000. As a result, both testified that they believed that the Corporation had been damaged to the extent of approximately $50,000. This testimony was allowed over the defendants['] objections as to foundation. On cross examination Mr. [Schieck] admitted that the company had filed an amended tax return in conjunction with the July 31, 1999 tax return, which reflected an operating loss of $67,329.00.... The subsequent admission of trial exhibit E, reflected an actual tax refund of $26,259.00.
9. That both expert witnesses, Richard Shamley, CPA, and Dennis Howard, CPA, testified that § 382 of the Internal Revenue Code applied to the plaintiff-tax payer in this case. Mr. Howard testified regarding the operative part of the IRC Section which applied to this case and recited the mechanical application of the statute to the facts of this case and testified that applying § 382 of the Internal Revenue Code to the sale resulted in a limitation of the amount of the loss carry forward which could be used in each year. Mr. Howard testified that the amount of such limitation was $14,125 per year, pro-rated in the first year to $5,885.... Dennis Howard testified further that applying the limitations on the amount of loss carryforward which could be claimed to the actual tax returns, after the $160,633 adjustment to the loss carry forward was deducted, that since the time of the sale there was no net change in any tax consequences to the plaintiff-taxpayer through the July 31, 1999 tax year, and that of the $42,981 remaining loss carryforward, that $8,846 of such loss remained to be used in FYE July 31, 2000, if there was any net income.... Mr. Howard further testified that and the court found that if the total of $14,125 in loss carryforward could be used against FYE 7-31-00 income the future loss for such year would be $662.51. Both experts testified that unless the company has taxable income in the future there would be no future damages.
10. That the Plaintiff Diane E. Schieck, the treasurer for the Corporation, testified that she handled the day-to-day bookkeeping activities for the Corporation. Ms. Schieck testified that as of April 30, 2000, the Corporation had income of approximately $110,000. She further testified that she anticipated additional income through the end of the Corporation's tax year. Such testimony was allowed over the defendants' objection to foundation and best evidence.
11. That the Defendants' expert, Dennis Howard, CPA testified regarding the maximum damages which could be sustained based upon the Plaintiff Rocky Mountain Cementers, Inc. generating at least $14,125 of net taxable income in every year from the year 2001 through 2010. Mr. Howard testified that based upon the historical average tax rate calculated by *52 him and the use of 9% for the capitalization rate for determination of the present value of the MAXIMUM future losses, Mr. Howard calculated the MAXIMUM future damages at $11,438.80. Mr. Howard also testified that the present value of the MAXIMUM future damages would only be... $8,680.98 if a capitalization rate of 15% were to be used.

CONTRACT DAMAGES
[¶ 10] In an action for breach of contract, the damages awarded are designed to put the plaintiff in the same position as if the contract had been performed, less proper deductions. JBC of Wyoming Corp. v. City of Cheyenne, 843 P.2d 1190, 1195 (Wyo.1992). The plaintiff has the burden of producing sufficient evidence to prove his damages. Wagon Wheel Village, Inc. v. Harris, 993 P.2d 323, 325 (Wyo.1999). "`Damages must be proven with a reasonable degree of certainty, and a court may not resort to speculation or conjecture in determining the proper amount to award.'" Sannerud v. Brantz, 879 P.2d 341, 345 (Wyo.1994) (quoting Cottonwood Valley Ranch, Inc. v. Roberts, 874 P.2d 897, 899 (Wyo.1994)).

DISCUSSION

May the court allow testimony regarding future profits without foundation, based on conjecture and speculation over the objection of the appellants for lack of foundation and best evidence?
[¶ 11] The sellers' primary argument is that the trial court erred by allowing the testimony of the buyers and the buyers' CPA regarding the amount of the corporation's future profits. The sellers contend that the trial court should have sustained their objections under W.R.E. 701, for lack of foundation, and under W.R.E. 1002, for lack of best evidence, as no documentation regarding the books and records of the corporation were offered into evidence to support the witnesses' speculations.
[¶ 12] The Statement of Proceedings indicates that two certified public accountants testified as experts for the buyers and sellers at trial. The Statement of Proceedings does not specify whether the buyers who testified did so as expert witnesses. With nothing more in the record, we assume that they testified as lay witnesses. W.R.E. 701 states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.
This Court has stated that "[i]t was the intent of the framers of the Rules of Evidence to considerably relax the prohibition against receipt of opinion testimony both by expert and lay witnesses. Generally, the rules should be liberally construed to allow the admission of such evidence." McCabe v. R.A. Manning Const. Co., Inc., 674 P.2d 699, 705 (Wyo.1983).
[¶ 13] The question of allowing or excluding evidence is a question for the trial court to decide. Brockett v. Prater, 675 P.2d 638, 641 (Wyo.1984). A trial court's ruling will not be overturned without a clear showing of an abuse of discretion. Id. In determining whether there has been an abuse of discretion, "`the ultimate issue is whether or not the court could reasonably conclude as it did.'" Vaughn v. State, 962 P.2d 149, 151 (Wyo.1998) (quoting Gaines v. Doby, 794 P.2d 566, 570 (Wyo.1990)). The burden is on the appellant to show such abuse. Blake v. State, 933 P.2d 474, 477 (Wyo.1997).
[¶ 14] Without a transcript, it is impossible to determine what foundation may have been laid for the challenged testimony. However, some foundation for the opinions is contained in the Statement of Proceedings. Therefore, we accept the trial court's findings as to the admissibility of this evidence. Salt River Enterprises, Inc. v. Heiner, 663 P.2d 518, 520 (Wyo.1983). We cannot say that it was an abuse of discretion for the trial court to have admitted the buyers' lay opinions as to future profits.
[¶ 15] The sellers also contend that this testimony violated W.R.E. 1002. W.R.E. 1002 states: "To prove the content of a writing, *53 recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." W.R.E. 1001 defines writings and recordings as consisting of "letters, words, sounds, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation[.]" (Emphasis added.)
[¶ 16] There is nothing in the trial court's findings or in the Statement of Proceedings to suggest that the buyers' testimony was given to prove the contents of a writing. Rather, the testimony was offered as opinions on the likelihood of future profits. W.R.E. 1002 does not apply to such testimony, so it was not error for the trial court to overrule the sellers' objection.
[¶ 17] The sellers' statement of this first issue is limited to the admission of testimony regarding future profits of the corporation. In their appellate brief, however, the sellers also contend that it was error for the trial court to allow Neal Johnson, the corporation's accountant, to testify that the NOL carry forward reduction amount was $160,633.00. Their major concern is that Neal Johnson's statement as to the amount of the reduction is reflected in the one documentary piece of evidence produced by the buyers. This was a copy of the revised audit report made by the IRS, which itemized the adjustments made to income. The amount came to $160,633.00, to which the IRS then deducted a previous NOL of $84,370.00, to arrive at a total adjustment for year ending July 31, 1995, of $76,263.00. This value equaled the corporation's taxable income for the year, a loss of $76,263.00, so the corrected income was $0.00, and no taxes were due. This evidence, not the evidence concerning future profits, is the primary focus of the sellers' W.R.E. 1002 argumentthe best evidence of the NOL carry forward reduction would be the IRS audit report.
[¶ 18] Once again, the limitations inherent in having a statement of the proceedings, rather than a transcript, make it impossible to determine the exact basis for the trial court's evidentiary rulings. Some information may be discerned from the known facts. For instance, Neal Johnson was not giving an opinion as an expert witness; rather, he was testifying as a fact witnessthe corporation's accountant. Further, his testimony detailed the nine separate expenses that had been disallowed by the IRS, including the separate amount for each expense. While we know from the scant record that the sellers objected to this testimony on the basis of foundation and the best evidence rule, we do not know what foundation may have been laid, nor what writings, if any, may have been utilized to produce the individual numbers, nor do we know why the trial court overruled the objections. What is most odd, given the nature of an objection under W.R.E. 1002, is the fact that the IRS examination report detailing the $160,633.00 NOL reduction had been received into evidence as Plaintiffs' Exhibit 13. It is hard to comprehend a best evidence objection under these circumstances. The sellers have not met their burden of showing that the trial court abused its discretion in admitting this testimony.

May the court award a judgment for damages against the defendants based in part on losses claimed due to the filing of an incorrect or fraudulent tax return of the plaintiffs?
[¶ 19] This issue is founded in the testimony of the buyers' expert, Richard Shamley, CPA. Mr. Shamley estimated the buyers' tax loss at $50,086.00. He admitted, however, that this estimate was based upon the corporation's 1997 and 1998 tax returns, which were not completed in accordance with IRC § 382. The sellers' expert, Dennis Howard, CPA, agreed that the tax returns did not follow the Internal Revenue Code. Nevertheless, the trial court utilized the $50,086.00 figure in determining the buyers' damages. That is the error now alleged.
[¶ 20] The sellers' expert, using the same $160,633.00 NOL carry forward reduction relied upon by the buyers' expert, but using what he considered to be the correct IRS procedures, calculated the buyers' damages to be $12,101.31. The trial court found that both opinions were "based upon valid and thoughtful accounting approaches to the projection *54 of any loss attributable to the reduction of the said net operating loss carry forward of Rocky Mountain Cementers, and therefore, should be given equal consideration." The trial court then averaged the two computations, awarding damages in the amount of $31,093.65.
[¶ 21] We agree with the sellers that this computation was in error. When evaluating the validity of a trial court's judgment, we consider only the evidence and inferences favorable to the party for whom the judgment was rendered. Sun Land & Cattle Co. v. Brown, 394 P.2d 387, 389 (Wyo. 1964). When this Court does not have a properly authenticated transcript before it, it must accept the trial court's findings of fact upon which it bases any decisions regarding evidentiary issues. Salt River Enterprises, Inc., 663 P.2d at 520. On the other hand, "[t]he factual findings of a judge are subject to a broader scope of review than a jury verdict, and the appellate court may examine all of the properly admissible evidence in the record." R.C.R., Inc. v. Rainbow Canyon, Inc., 978 P.2d 581, 586 (Wyo.1999).
[¶ 22] The trial court found that, "[t]he reduction in the net operating loss carry forward of Rocky Mountain Cementers resulting from the Internal Revenue Service audit directly and proximately caused a loss to the Schiecks/Kerns and Rocky Mountain Cementers." It went on to find that, "[t]he testimonies of E. Tim Schieck and John D. Kerns, the President and Vice President/Treasurer of Rocky Mountain Cementers respectively, reflect the Schiecks/Kerns' calculation of their loss to be approximately $50,000, based upon a reduction in the net operating loss carry forward of approximately $160,000." The trial court concluded:
Competent and persuasive evidence was presented at trial to establish that the Schiecks/Kerns and Rocky Mountain Cementers have proven by a preponderance of the evidence that they suffered a loss as a result of the reduction of the net operating carry forward represented to be available to Rocky Mountain Cementers in its 1994 U.S. Corporation Income Tax Return for the tax year beginning August 1, 1994, ending July 31, 1995; that the Capshaws expressly agreed to indemnify the Schiecks/Kerns and Rocky Mountain Cementers from "any loss or damage occasioned by any act of the corporation, its officers, directors and shareholders"; and that accordingly, the Capshaws are liable to the Schiecks/Kerns and Rocky Mountain Cementers for a reasonable value to be attributed to the loss sustained by the reduction of the net operating loss carry forward....
(Emphasis in original.)
[¶ 23] There was sufficient evidence in the record that allowed the trial court to conclude as it did as to future profits. The buyers' CPA expert testified that the corporation's tax returns showed a profit for three of the last four years. He further testified that the one year showing a loss was due to extensive equipment purchase. Based on this past performance, the CPA expert expected the corporation to be profitable in the future. The corporate officers provided similar testimony. It was reasonable for the trial court to conclude that the corporation would have future profits, and that it would suffer a loss as a result of the NOL carry forward reduction.
[¶ 24] It was not reasonable, however, to accept the buyers' expert's damage computation where even the buyers' expert agreed that the computation was based on an improper application of the Internal Revenue Code by the corporate accountant. IRC § 382 states, in part:
(a) General rule.The amount of the taxable income of any new loss corporation for any post-change year which may be offset by pre-change losses shall not exceed the section 382 limitation for such year.
(b) Section 382 limitation.For purposes of this section
(1) In general.Except as otherwise provided in this section, the section 382 limitation for any post-change year is an amount equal to
(A) the value of the old loss corporation, multiplied by
(B) the long-term tax-exempt rate.

*55 * * *
(e) * * *
(1) In general.Except as otherwise provided in this subsection, the value of the old loss corporation is the value of the stock of such corporation ....
26 U.S.C.A. § 382 (1988).
[¶ 25] Applying the above to the instant case, the value of the corporation equals the value of the stock, which is $250,000.00. If this amount is multiplied by the long-term tax exempt rate of 5.65% for 1996,[3] the maximum amount of NOL carry forward that could be utilized in a tax year would be $14,125.00, prorated in the first year (1996 tax return) to $5,885.00.[4] For each successive year, the exemption amount would be $14,125.00.
[¶ 26] For the 1996 tax year ending July 31, 1997, the corporation's accountant improperly applied a NOL carry forward amount of $88,346.00 rather than the prorated amount of $5,885.00 as allowed by the federal government. The buyers' CPA expert testified that the reduction of the NOL carry forward resulted in a tax loss of $50,086.00. This testimony was based upon the manner in which the corporation's accountant prepared the 1996 and 1997 tax returns. Because the corporation accountant's methods were incorrect (for the 1996 tax return he should have applied a NOL carry forward of $5,885.00 not $88,346.00, and for the 1997 return, he should have applied $14,125.00 rather than $5,702.00), the CPA expert's calculations of $50,086.00 cannot be accurate. We find that the trial court erred in concluding that the CPA expert's accounting methods and calculations were correct, and his analysis should not have been utilized in calculating the damage award. The balance of the evidence leads to the conclusion that the opinion of the sellers' expertthat, assuming $160,633.00 as the NOL carry forward reduction, the buyers' loss would be $12,101.31is correct. The judgment must be reduced to that amount.[5]

May the court award judgment for future damages for loss of future tax benefits when the plaintiff[s] put on no evidence regarding the amount of any future taxable income?
[¶ 27] This is a sufficiency of the evidence issue. In such case, we do not substitute ourselves for the trial court as a finder of fact; instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law. Kendrick v. Barker, 2001 WY 2, ¶ 12, 15 P.3d 734, 738-39 (Wyo.2001). We assume that the evidence of the prevailing party is true, and give to it every favorable inference. Id. at 738. We do not consider the contrary evidence. Town of Wheatland v. Bellis Farms, Inc., 806 P.2d 281, 284 (Wyo.1991) (quoting Sun Ridge Development, Inc. v. City of Cheyenne, 787 P.2d 583, 589 (Wyo. 1990)). The findings of the trial court are affirmed if there is any evidence to support them. Bowker v. Bowker, 795 P.2d 1215, 1218 (Wyo.1990); Pine Creek Canal No. 1 v. Stadler, 685 P.2d 13, 19 (Wyo.1984).
[¶ 28] At the risk of being redundant, we will state yet again that a W.R.E. 3.03 statement of the proceedings is not as helpful as a transcript when evaluating evidentiary issues. And, pursuant to Salt River Enterprises, Inc., 663 P.2d at 520, we must once again give greater deference to the trial court's determinations. In so doing, we find that the Statement of Proceedings contains sufficient evidence to substantiate the trial court's conclusion that the corporation will have sufficient future profits to sustain damage by virtue of the NOL carry forward reduction. Specifically, according to the Statement of Proceedings, Neal Johnson testified *56 that the corporation's 1996 tax return reflected "profit income" of $88,346.00. He further testified that the 1997 tax return showed income of $176,692.00. The president and vice-president of the corporation testified that, for the current year, the corporation had a profit of $110,000.00, and that they "fully expected the Corporation to make a profit in the future." The corporate treasurer's testimony confirmed the current income of $110,000.00, and she also testified that additional income through the end of the year was anticipated. The buyers' expert testified that the corporation had made a profit in three of the four years since the purchase and that, in the one year showing a loss, there was considerable equipment purchased. He also testified that, based on past profits, he would expect future profits sufficient to utilize a NOL carry forward. This testimony, taken together, was sufficient to support the finding that the corporation would make profits in the future.

CONCLUSION
[¶ 29] The trial court did not abuse its discretion in admitting testimony as to future profits and use of the NOL carry forward. In addition, there was sufficient evidence of future profits to sustain a judgment in favor of the sellers. The trial court erred, however, in relying upon the opinion of the buyers' expert in determining the amount of damages, where even that expert agreed that his opinion was based upon an incorrect tax return computation. The evidence supports a damage award of $12,101.31. This case is remanded to the trial court for entry of a judgment in that amount in favor of the buyers.
NOTES
[1] A net operating loss is the excess of allowable deductions over gross income computed under the law in effect for the loss year. 2002 Master Tax Guide ¶ 1176 at 347 (CCH 2001). Under Internal Revenue Code (IRC) § 382, a corporation may use a specified amount of the loss to offset income for a given year, thereby reducing the corporation's taxes for that year. Generally, losses can be carried back for two years preceding the loss and carried forward for twenty years following the loss. Losses occurring prior to August 6, 1997, could be carried back for three years and carried forward for fifteen years. 2002 Master Tax Guide, supra, ¶ 1179 at 348.
[2] The trial court found the amount of the reduction to be $160,633.00. That finding is one of the issues in this appeal.
[3] Federal long-term, tax exempt rate (highest of January, February, or March 1996). 4 Standard Fed. Tax Rep., Net Operating Loss Deduction, ¶¶ 12,002-12,014 (CCH 2002).
[4] The corporation's tax year is from August 1 to July 31. Therefore, for the first year, the prorated exemption would be for five months, August through December. To arrive at $5,885.00, multiply 5/12 times the yearly exemption of $14,125.00.
[5] This case is remanded to the trial court for modification rather than recalculation of the damages, as the trial court has already concluded that $12,101.31 is a valid assessment of damages.