2011 WY 27

**Scott R. KNIGHT, Appellant (Plaintiff),**

v.

**TCB CONSTRUCTION AND DESIGN, LLC and Catherine Petersen, Personal Representative for the Estate of Eric S. Turner, Appellees (Defendants).**

No. S–10–0173.

Supreme Court of Wyoming.

Feb. 18, 2011.

Representing Appellant: Jason M. Tangeman of Nicholas & Tangeman, LLC, Laramie, Wyoming.

Representing Appellees: Megan L. Hayes and Allen Gardzelewski of Corthell and King, P.C., Laramie, Wyoming. Argument by Ms. Hayes.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] Scott R. Knight (Knight) appeals a district court's damages award and findings

relating to liability arising out of a construction contract between Knight and TCB Construction and Design, L.L.C. We affirm.

## ISSUES

[¶ 2] 1. Did the district court err as a matter of law when it determined that a second contract superseded the first?

2. Did the district court err as a matter of law in the method it used to calculate damages?

## FACTS

[¶ 3] On March 7, 2008, Knight contracted with Deerwood Log Homes, Inc. (Deerwood), in which Deerwood was to build a log home for Knight on property located outside of Laramie, Wyoming. A disagreement between Deerwood and Knight developed, leading to Deerwood's termination from the project and a subsequent settlement agreement.

[¶ 4] On August 28, 2008, Knight entered into a contract (Agreement) with Eric Turner (Turner) to finish the construction project.[1] Turner had recently moved to Wyoming from Colorado and was doing business as TCB Construction and Design.[2] The Agreement was a time and materials contract, which called for TCB Construction and Design to complete the log home project for Knight and in return receive compensation in the amount of time and materials, plus 33%. The Agreement aimed for a November 2008 completion date. The Agreement was signed by Knight as owner of the property and by Turner with the notation of TCB Construction & Design under his signature.[3] More will be said below in the discussion section about the specific terms of this Agreement.

[¶ 5] On September 5, 2008, Turner organized TCB Construction and Design as a Wyoming limited liability company. We will refer to TCB Construction and Design, L.L.C. as TCB Construction, LLC and its non-LLC counterpart as TCB Construction and Design. On September, 10, 2008, TCB Construction, LLC and Knight entered into a contract called "Addendum to Agreement," which provided in part that TCB Construction, LLC would assume and complete the log home for Knight. The Addendum set the price of completion at $400,000.00, less $80,000.00 already received. The Addendum also referenced two other separate projects: a Solar and Wind Array (Solar/Wind Array) contract for $109,000.00 and a Generator/Pump House/Electrical Building (Generator Building) contract for $60,000.00. The Addendum was signed by Knight, as owner of the property, and Turner, with the notation of TCB Construction & Design beneath Turner's signature, but the Addendum bore the subheading "TCB Construction and Design, LLC" in bold lettering.[4] More will be said in the discussion section about the Addendum and separate Solar/Wind Array and Generator Building contracts.

[¶ 6] In early December 2008, the relationship between Knight and TCB Construction, LLC had soured and Knight terminated TCB Construction, LLC from the project. Knight hired S & J Log Construction to complete the project. Shortly thereafter, Knight filed a lawsuit against TCB Construction, LLC and Turner, individually, alleging numerous causes of action, including fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of implied warranty, and unjust enrichment. Following a bench trial, the district court issued a decision letter and judgment, making the following general conclusions: (1) the Addendum superseded the Agreement, with the newly formed TCB Construction, LLC as the party responsible for completion of the construction project; (2) the Addendum converted the Agreement for constructing the log home from a time and materials, plus 33%, contract, to a flat

---

1. Turner died shortly after the underlying action was commenced. Turner's estate was then substituted as a party. Accordingly, any reference to Turner individually also refers to Turner's estate.

2. At the time that the parties entered into the Agreement, TCB Construction and Design had been organized as a limited liability company in the State of Colorado, but was not a registered company in Wyoming.

3. The Agreement was also signed by Brad Lightsey who worked for Turner.

4. Brad Lightsey also signed the Addendum.

fee contract in the amount of $400,000.00, less the $80,000.00 already paid; (3) TCB Construction, LLC breached the contract by failing to complete the construction project by the November deadline; (4) TCB Construction, LLC owed Knight damages in the amount of $31,850.37 for its breach; and (5) Turner was not personally liable for the damages, because TCB Construction, LLC had organized as an LLC in Wyoming prior to entering into the Addendum. Knight filed a timely notice of appeal.

## DISCUSSION

### Did the district court err as a matter of law when it determined that a second contract superseded the first?

[¶ 7] The resolution of this issue requires this Court to interpret the Agreement and Addendum to determine what contract was in effect. We have repeatedly held that interpreting contracts is a question of law, which we review *de novo*. *See, e.g., Terris v. Kimmel*, 2010 WY 110, ¶ 7, 236 P.3d 1022, 1025 (Wyo.2010).

> The primary focus is on determining the intent of the parties to the contract. The initial question is whether the language of the contract is clear and unambiguous. If it is, then the trial court determines the parties' intent from the contract language alone. It does not consider extrinsic evidence, although it may consider the context in which the contract was written, including the subject matter, the purpose of the contract, and the circumstances surrounding its making, all to help ascertain what the parties intended when they made the contract. The trial court then enforces the contract in accordance with the plain meaning its language would be given by a reasonable person. All of these issues— deciding whether a contract is unambiguous, determining the parties' intent from the unambiguous language, and enforcing the contract in accordance with its plain meaning—involve questions of law for the trial court. When we undertake de novo review of the trial court's conclusions of law, we follow the same familiar path. *See Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.,*

2003 WY 139, ¶¶ 7–8, 78 P.3d 679, 681–82 (Wyo.2003), *and cases cited therein.*

*Id.* (quoting *Horse Creek Conservation Dist. v. State ex rel. Wyo. Attorney Gen.*, 2009 WY 143, ¶ 25, 221 P.3d 306, 315 (Wyo.2009)).

[¶ 8] Knight argues that the district court erred when it determined that the Addendum superseded the Agreement thereby relieving Turner of personal liability. We disagree with Knight and hold that the Addendum controlled and ultimately relieved Turner and his successor estate of liability.

[¶ 9] "Generally, contracts—even fully executed ones—can be cancelled or rescinded by the mutual consent of the parties." 29 Samuel Williston, *Treatise on the Law of Contracts* § 73:15, at 49 (Richard A. Lord ed., 4th ed. 2003). "Rescission generally must be exercised in toto and is applied to the contract in its entirety with the result that what has been done is wholly undone and no contract provisions remain in force to bind either of the parties." *Id.* The intent to rescind a contract does not need to be express or in writing, but can be inferred from the conduct of the parties and the surrounding circumstances. *See Roussalis v. Wyo. Med. Ctr.*, 4 P.3d 209, 249 (Wyo.2000); 29 Williston, *supra*.

[¶ 10] Whether Turner's estate is liable to Knight under the terms of the first Agreement depends on whether the parties intended to rescind that contract. It is clear that Turner's intent was to rescind the earlier Agreement, to which he individually was a party, and enter into the Addendum on behalf of the newly organized TCB Construction, LLC. The record demonstrates that Turner was actively trying to organize TCB Construction, LLC in the days immediately following entering into the Agreement. Jeanene Johnson, TCB Construction, LLC's bookkeeper and secretary, testified that Turner wanted to organize TCB Construction, LLC before he started any work on Knight's project. Turner successfully organized TCB Construction, LLC on September 5, 2008, only eight days after entering into the Agreement and five days before entering into the Addendum. Turner's intent was obviously to

organize TCB Construction, LLC in order to have liability protection.

[¶ 11] The record also indicates that Knight knew about the organization of the newly formed LLC and creating the Addendum was partially his idea. Jeanene Johnson testified that Turner and Knight both wanted to enter into the Addendum and that Knight knew TCB Construction, LLC had been organized at the time of entering into the Addendum. Furthermore, the heading on the Addendum reads "TCB Construction and Design, LLC" in bold print.

[¶ 12] Additionally, the parties' intent to rescind the Agreement is evidenced by the fact that they materially changed the terms of the Agreement when they entered into the Addendum. The Agreement called for Turner to construct a house for Knight. The Agreement set forth the compensation that Turner was to receive as a "time and materials" contract, whereby Turner would be compensated for his time and materials, plus 33%. The Addendum, however, changed the compensation with regard to the construction of the house from a "time and materials" contract, plus 33%, to a flat rate fee of "**$400,000.00 less 80,000.00 already received.**" (Emphasis in original.) In addition to changing materially the terms of the Agreement, the parties were also changed. Knight and Turner, d/b/a TCB Construction and Design, were parties to the Agreement, whereas Knight and TCB Construction, LLC were parties to the Addendum. Turner was acting on behalf of TCB Construction, LLC when the Addendum was made; he was not personally a party. The parties' conduct, including organizing TCB Construction, LLC, materially changing the terms of the contract, and changing the parties, demonstrates that the parties intended to rescind the Agreement, thus leaving the Addendum to control. Consequently, because the Agreement was rescinded, and Turner was not a party to the Addendum, Turner is not personally liable for any damages resulting from the breach of the Addendum and the district court did not err in finding the same.[5]

[¶ 13] Knight argues that the Addendum contains a clause that evidences the parties' intent to have the Agreement remain operative and controlling. The clause in the Addendum upon which Knight relies states, "The provisions defined in the first page of the Agreement between **Mr. Scott Knight and TCB Construction and Design, LLC** are maintained and considered binding." (Emphasis in original.) We have said the following regarding contract clauses that reference other documents: "It is a common and necessary practice, however, for contracts to refer to and obtain meaning from other documents. A contract may refer elsewhere for full understanding of its terms, just as it may adopt another document by reference." *Pribble v. State Farm Mut. Auto. Ins. Co.*, 933 P.2d 1108, 1113 (Wyo. 1997). Furthermore, it has been said that:

> So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned. It is not necessary to refer to or incorporate the entire document; if the parties so desire, they may incorporate a portion of the document. . . .
>
> Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument. The incorporated matter is to be interpreted as part of the writing.

11 Williston, *supra* § 30:25, at 233–34.

[¶ 14] The purpose of the clause upon which Knight relies when considered in connection with both contracts and the parties' conduct, was to incorporate into the Addendum by reference the provisions pertaining to the construction of the house that were listed in the Agreement. Clearly it was not the parties' intent to incorporate the entire Agreement by reference, because they mate-

---

5. The district court's decision letter notes that Knight presented no evidence at trial to support piercing the LLC's veil, and Knight makes no such argument on appeal.

rially changed some of the terms, including the contract price. Incorporating by reference some of the provisions of the Agreement does not change the fact that the parties had rescinded the Agreement when they entered into the Addendum. Incorporating by reference some of the provisions from that Agreement was done as a matter of convenience, but that act alone did not make the Agreement, as a whole, operative again.

[¶ 15] Knight also argues that the district court was bound by a pre-trial summary judgment ruling in which the district court refused to grant Knight summary judgment on the issue of liability. Specifically, Knight argues that by finding, at the conclusion of the trial, that the Addendum controlled and thus TCB Construction, LLC was liable for any damages and not Turner, individually, the district court contradicted its earlier summary judgment ruling and should be bound by that earlier ruling. Knight relies on the law of the case doctrine to support his argument that the district court was bound by its summary judgment ruling. The law of the case doctrine provides that "a court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." *Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 667 (Wyo.1993). The fatal flaw in Knight's reasoning is that the district court never made a final determination at the summary judgment stage as to Turner's personal liability. In denying Turner's summary judgment motion, the district court determined that at the time the Agreement was made, TCB Construction and Design had not been organized as an LLC, and, consequently, under Wyoming statutes Turner was not shielded from liability arising from the Agreement. However, the district court also noted that "[t]he effect of [the] Addendum is not at issue here, and no determination concerning the same is intended by the Court." It is clear that what the district court was considering at the summary judgment stage was whether factual issues existed that could give rise to Turner's personal liability, without considering the effect of the Addendum. As noted above, the district court ultimately made the correct determination of liability at the end of the trial after it

had considered evidence relating to the subsequent Addendum. Accordingly, we find that the law of the case doctrine does not apply in this situation and the district court was not bound by the initial summary judgment ruling. The district court did not err in finding that the Addendum controlled and that only TCB Construction, LLC was liable for damages for breach of contract.

### Did the district court err as a matter of law in the method it used to calculate damages?

[¶ 16] Knight argues that the district court employed the wrong methodology to determine the amount of damages, which resulted in a windfall for TCB Construction, LLC. The issue of whether the district court employed the proper methodology or legal standard to calculate the damages award is an issue of law, which we review *de novo*. *Cross v. Berg Lumber Co.*, 7 P.3d 922, 931 (Wyo.2000). However, assuming that the district court applied the appropriate methodology to calculate damages, the district court's damages calculation is a question of fact, which we review for clear error. *Velasquez v. Chamberlain*, 2009 WY 80, ¶ 27, 209 P.3d 888, 895 (Wyo.2009). In that regard, we have said the following:

> This Court applies a clearly erroneous standard when reviewing findings of fact made by the district court after a bench trial. A finding is clearly erroneous when, even though substantial evidence supports it, the reviewing court is left with the definite and firm conviction that a mistake was made.
>
> We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law. Although the factual findings of a trial court are not entitled to the limited review afforded a jury verdict, the findings are presumptively correct.
>
> This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. Due regard is given to the opportunity

of the trial judge to assess the credibility of the witnesses. We accept the prevailing party's evidence as true and give to that evidence every favorable inference which may fairly and reasonably be drawn from it. Findings may not be set aside because we would have reached a different result.

*Id.* at ¶ 14, at 891 (quoting *Estate of Jedrzejewski ex rel. Severn v. Bierma,* 2008 WY 151, ¶ 9, 197 P.3d 1254, 1256 (Wyo.2008)) (internal citations omitted).

▇▇▇▇▇ [¶ 17] We have stated that the "legal remedy for a breach of contract is the award of damages designed to place the plaintiff in the same position in which he would have been had the contract been fully performed, less proper deductions." *Winter v. Pleasant,* 2010 WY 4, ¶ 25, 222 P.3d 828, 838 (Wyo.2010) (quoting *Dewey v. Wentland,* 2002 WY 2, ¶ 52, 38 P.3d 402, 420–21 (Wyo. 2002)). "The plaintiff has the burden of producing sufficient evidence to prove his damages. 'Damages must be proven with a reasonable degree of certainty, and a court may not resort to speculation or conjecture in determining the proper amount to award.'" *Capshaw v. Schieck,* 2002 WY 54, ¶ 10, 44 P.3d 47, 52 (Wyo.2002) (quoting *Sannerud v. Brantz,* 879 P.2d 341, 345 (Wyo.1994)) (internal citations omitted).

▇▇▇▇ [¶ 18] The district court determined that the Addendum controlled, which Addendum changed the parties' agreement from a time and materials project to a flat fee of $400,000.00 for construction of the home, $109,000.00 for construction of the Solar/Wind Array, and $60,000.00 for construction of the Generator Building, for a total of $569,000.00. The district court determined Knight's damages in the following manner: $587,860.37 (total amount paid by Knight to TCB Construction, LLC)[6]—$569,000.00 (contract price)=$18,860.37 (amount overpaid)+$10,000.00 (amount paid by Knight to another contractor to fix the roof)+$2,990.00 (amount paid by Knight to another contrac-

tor to correct wiring problems)=$31,850.37 (total damages).

[¶ 19] Interestingly, Knight concedes in his brief that the district court's damages calculation "may be a proper methodology for calculating damages in a breach of contract/unfinished construction case." Nevertheless, Knight takes exception with the district court's damages calculation and implies that this is a novel damages case which the district court failed to identify appropriately. Knight argues, as he did in the district court, that the measure of damages should be whatever money was left in TCB Construction, LLC's bank account, which happened to be $100,957.24, rather than a calculation of the actual damages proved to have been suffered by Knight. Frankly, we see no authority for application of this novel damages calculation.

▇▇▇▇ [¶ 20] As noted above, the "legal remedy for a breach of contract is the award of damages designed to place the plaintiff in the same position in which he would have been had the contract been fully performed, less proper deductions." *Winter,* 2010 WY 4, ¶ 25, 222 P.3d at 838 (quoting *Dewey,* 2002 WY 2, ¶ 52, 38 P.3d at 420–21). The methodology employed by the district court to calculate damages comported with the above-stated law and accurately reflected Knight's provable damages. The district court calculated damages by determining the contract price, awarded the difference between the contract price and the amount overpaid, and awarded additional damages for the completion of the portions of the project that Knight could prove were part of the original contract and were not completed by TCB Construction, LLC (i.e., the roof and wiring). *See supra* ¶ 18.

[¶ 21] As the plaintiff, Knight shouldered the burden to prove his damages. *Capshaw,* 2002 WY 54, ¶ 10, 44 P.3d at 52. Consequently, it was incumbent upon Knight to introduce sufficient evidence to prove those damages. *Wagon Wheel Village, Inc. v. Harris,* 993 P.2d 323, 325 (Wyo.1999). The trial transcript and the district court's deci-

---

6. This amount was calculated based on Knight's exhibits, which exhibits evidenced Knight's payments to TCB Construction, LLC. The total amount paid by Knight was actually $597,860.37, but Knight received a $10,000.00 reimbursement, bringing the total amount paid to $587,860.37.

sion letter evidence the difficulties that Knight had trying to meet his burden. In large part this was due to the fact that subsequent to terminating TCB Construction, LLC, Knight hired S&J Log Construction to finish the construction. However, S&J Log Construction was not hired simply to finish the work that TCB Construction, LLC had not completed, but instead was hired to finish that work and do additional work. The district court's findings relating to the evidence that Knight presented to prove his damages illuminate the problems created by expanding the scope of the construction project when Knight hired S&J Log Construction:

> However, based upon the evidence presented at trial, the Court finds that Knight failed to prove these damages by preponderance of the evidence. Specifically, Knight did not establish what work [S]&J Log Construction performed that TCB Construction had failed to perform. More importantly, Knight did not establish the value of the work that [S]&J Log Construction performed in TCB Construction's stead.

Knight admits in his brief that "it was incredibly difficult to tie the [S&J Log Construction] invoices to any specific portion of the project that remained to be completed by [TCB Construction, LLC]." It appears that Knight is requesting this Court to do exactly what the district court was unwilling to do: relieve Knight of the burden of proving his damages with reasonable certainty. We will not resort to speculation in determining damages. *Capshaw*, 2002 WY 54, ¶ 10, 44 P.3d at 52. The district court awarded Knight damages in the amount that he could prove: $31,850.37. Consequently, we find that the district court did not err in the methodology or legal standard used to calculate damages, nor did it abuse its discretion in calculating the amount of damages ultimately awarded based on the evidence presented.

■ [¶ 22] Knight also argues that the district court's damages calculation was incorrect because the district court should have calculated the Solar/Wind Array and Generator Building contracts separately from the Addendum contract price governing the con-

struction of the home, because they were all separate contracts. Knight alleges that he paid $110,990.00 for the Solar/Wind Array, which had an estimated cost of $109,000.00, and that TCB Construction, LLC's accounting records "are undisputed and show that, at the time [TCB Construction, LLC was] terminated from the project, $35,990.00 of the work [on the Solar/Wind Array] remained unfinished." Similarly, Knight argues that with regard to the Generator Building, Knight paid $68,082.74 toward the estimated cost of $60,000.00, and TCB Construction, LLC's accounting records reveal that $36,263.10 relating to the Generator Building remained in TCB Construction, LLC's accounts at the time they were terminated from the job. Knight's argument is flawed. To calculate the amounts mentioned above, Knight relies on TCB Construction, LLC's accounting ledgers, which only indicate the amount of money that was paid by Knight to TCB Construction, LLC for the completion of these projects, less any amounts that TCB Construction, LLC had paid for subcontractors, materials, or for its own time. The balances in those ledgers tell us nothing, however, about the actual damages suffered by Knight. Simply stated, the "amount left over" in one's bank account is not the proper calculation of damages. We cannot say that the district court erred in calculating damages.

## CONCLUSION

[¶ 23] The district court correctly held that the Addendum superseded the Agreement, because the record supports the conclusion that the parties intended to rescind the Agreement. Consequently, Turner and his successor estate were relieved of liability arising out of TCB Construction, LLC's breach of the Addendum. The district court used the appropriate method to calculate damages, and it did not abuse its discretion in the amount of damages awarded as the damages award accurately reflected Knight's proven damages.

[¶ 24] Affirmed.