# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 82

APRIL TERM, A.D. 2013

*July 10, 2013*

JERRY HERLING,

**Appellant**
**(Defendant),**

v.

**WYOMING MACHINERY CO.,**
**a Wyoming corporation,**

**Appellee**
**(Plaintiff).**

S-12-0227

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*

    Carissa D. Mobley and Cameron S. Walker of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.  Argument by Ms. Mobley.

*Representing Appellee:*

    Timothy M. Stubson of Crowley Fleck, PLLP, Casper, Wyoming

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    This case involves a complicated series of events that have so far led to litigation in as many as three Wyoming district courts, a jury trial in the United States District Court for the District of Wyoming, a bankruptcy proceeding in California, and this appeal.  Jerry Herling Construction, Inc. ("JHCI") contracted with Wyoming Machinery for rental and service of earthmoving equipment, but defaulted on the payments due under the agreement.  Wyoming Machinery seeks to enforce personal guaranties of JHCI's performance against Jerry Herling, JHCI's CEO.  Herling argues that an assignment of JHCI's retainage account and a settlement between other parties released him from his guaranties.  We agree with the trial court that Wyoming Machinery was entitled to judgment against Herling on his guaranties as a matter of law, but we find that there are genuine issues of material facts as to the correct amount of the judgment, and we therefore reverse and remand for further proceedings consistent with this opinion.

## ISSUES

[¶2]    1. Did JHCI's assignment of retainage it claimed to be owed by Tetra Tech EC, Inc. or an oral promise or representation by an employee of Wyoming Machinery release Jerry Herling from personal guaranties of JHCI's performance?

2. Did a settlement agreement between Tetra Tech and Wyoming Machinery release Jerry Herling from personal liability on his guaranties?

3. Were there genuine issues of material fact regarding the proper amount of the judgment to which Wyoming Machinery was entitled against Mr. Herling?

## FACTS

[¶3]    In 2007, PacifiCorp began development of three wind turbine farms in Converse and Carbon counties.  PacifiCorp hired Tetra Tech as the project's general contractor, and Tetra Tech subcontracted the civil earth moving work to JHCI.  Jerry Herling is the CEO and majority shareholder of JHCI.

[¶4]    Herling executed a revolving credit agreement with Wyoming Machinery for the rental of heavy earthmoving equipment and maintenance services in his capacity as CEO of JHCI.   He also executed a personal guaranty of JHCI's performance of the rental agreement. Beginning in February of 2008, Wyoming Machinery rented  JHCI approximately forty-four pieces of heavy machinery under the agreement.

[¶5]    JHCI began having difficulties paying its suppliers in June of 2008.   Herling claimed that PacifiCorp significantly accelerated the construction schedule to complete the wind farm projects by the end of 2008 in order to reap the benefits of federal tax

1

credits which were to expire soon. He contends that this accelerated schedule required JHCI to provide additional equipment and labor not included in its bid. He argued that JHCI was unable to make payroll or pay his suppliers because Tetra Tech stopped paying JHCI for work it had completed. Tetra Tech contended below and in a federal lawsuit that JHCI was not paid because it failed to properly perform the work required by its subcontract, and that Tetra Tech therefore properly withheld funds arguably due JHCI from a retainage account.[1]

[¶6] Wyoming Machinery threatened to remove its equipment from the jobs when it was not paid as required by the revolving credit agreement. Jerry Herling then signed a second personal guaranty which induced Wyoming Machinery to allow him to continue to use the equipment so that the work required by JHCI's subcontract could continue.

[¶7] In August of 2008, Tetra Tech learned that JHCI was not paying its suppliers, which could result in material liens being filed on the real property on which the wind farms were being built. Tetra Tech approached Wyoming Machinery and offered to pay some of JHCI's debt directly by using a two-party check that would draw on funds held in JHCI's retainage account in exchange for partial lien waivers from Wyoming Machinery. Wyoming Machinery supplied Tetra Tech with the requested lien waivers, but Tetra Tech did not pay anything at that point, later claiming that it had never agreed to pay any specific amount.

[¶8] Wyoming Machinery then again threatened JHCI with removal of the equipment unless JHCI assigned its interest in the retainage held by Tetra Tech to it. Jerry Herling executed the requested assignment as president of JHCI on September 16, 2008. Herling claims that he was released from his personal guaranties by an oral promise made to induce him to sign the assignment on behalf of JHCI. The facts concerning this assignment and its terms will be discussed in detail below.

[¶9] Tetra Tech refused to pay Wyoming Machinery any of the retainage it allegedly owed JHCI, assignment notwithstanding. Wyoming Machinery then terminated the revolving credit agreement with JHCI and removed its equipment in early September of 2008. Tetra Tech terminated its subcontract with JHCI and hired a replacement contractor to finish the excavation work on the wind farm projects. By this time JHCI owed Wyoming Machinery almost $1.3 million. JHCI claims that approximately $1.5 million remained in its retainage account with Tetra Tech at the time of these events.

---

[1] Retainage is a percentage of what one party to a construction contract owes the other, which is withheld to assure that all of the work under the contract has been satisfactorily completed and that all mechanic's liens have been released or expired. Those funds allow the owner or prime contractor to hire a replacement contractor or to pay to have liens released when necessary. *See A-C Const., Inc. v. Bakke Corp.*, 956 P.2d 219, 226 (Or. Ct. App. 1998); 3 Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 8:18 (2002).

[¶10] Wyoming Machinery sued JHCI, Tetra Tech, and Jerry Herling in the Seventh Judicial District in November of 2008. It claimed *quantum meruit* and breach of contract against JHCI and Tetra Tech. It claimed that Tetra Tech breached a promise that it would pay the company from JHCI's retainage, thus causing it to leave its equipment in place and to forego remedies it would otherwise have pursued. It also sought to hold Jerry Herling personally liable on his guaranties of JHCI's obligations under the revolving credit agreement.

[¶11] Wyoming Machinery also filed liens on the real property where its rental equipment had been used. On April 28, 2010, the Natrona County District Court granted Tetra Tech's motion for partial summary judgment and dismissed the lien claims, holding that rental equipment was not "material" within the scope of Wyoming's material lien statute, and that the liens were therefore invalid. That determination has not been appealed.

[¶12] In the meantime, JHCI filed a petition for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Central District of California on April 5, 2010, and the proceedings against it in this case were stayed. There is no indication that the claims against JHCI were ever dismissed, and so they are evidently still pending, but do not appear to have been pursued.

[¶13] After the ruling dismissing the lien claims and the bankruptcy filing, Tetra Tech and Safeco, which had supplied bonds to obtain release of the liens, entered into a written settlement agreement with Wyoming Machinery on December 28, 2010. Tetra Tech paid Wyoming Machinery $500,000 for a stipulated dismissal of claims against it and Safeco. Herling claims that he was released by this agreement, or in the alternative, that the $500,000 payment should reduce any judgment against him as guarantor of JHCI's obligation to Wyoming Machinery. The settlement agreement will be examined in greater detail below.

[¶14] Meanwhile, Tetra Tech had sued JHCI and Jerry Herling in the United States District Court for the District of Wyoming on September 25, 2008, claiming that JHCI had breached its subcontract. JHCI counterclaimed, alleging a breach of contract by Tetra Tech. Summary judgment was granted as to some of the personal claims against Herling, and the rest were dismissed by stipulation, and he therefore ceased to be a party before that case went to trial between Tetra Tech and JHCI.[2]

[¶15] Tetra Tech was ultimately awarded a judgment of approximately $1.4 million on October 31, 2011, although JHCI was allowed a substantial setoff based upon a theory of

---

[2] *Tetra Tech EC, Inc. v. Jerry Herling Construction Inc. & Jerry Herling, an individual*, No. CV-08-00210, Documents 22, 112, and 123, (D. Wyo. Oct. 3, 2011).

unjust enrichment.[3] As will be discussed below, that case involved a relatively complex set of claims and counterclaims which may have directly or indirectly determined the ownership of funds held in JHCI's retainage account with Tetra Tech.

[¶16] Wyoming Machinery moved for summary judgment against Jerry Herling in this case on January 31, 2011, about a month after its settlement with Tetra Tech. Herling responded to the motion and also filed a cross-motion to dismiss, collectively claiming that he had been released from his guarantee by virtue of the settlement between Tetra Tech and Wyoming Machinery or the assignment of JHCI's retainage to Wyoming Machinery. In a statement of material facts filed with its motion for summary judgment under Wyoming Rule of Civil Procedure 56.1, Wyoming Machinery indicated that the undisputed amount of its debt was $884,019.59, plus attorney fees. This would be approximately what JHCI originally owed Wyoming Machinery, less $500,000.

[¶17] On October 21, 2011, the district court denied Herling's motion to dismiss based on the Wyoming Machinery/Tetra Tech settlement, concluding that:

> The Defendant Jerry Herling is not a party to the subject settlement agreement entered into between Wyoming Machinery Company, Tetra Tech EC, Inc., and Safeco Ins. Co. of America. Said agreement specifically requires the Plaintiff to pursue the claims against Defendant Jerry Herling and did not intend or contemplate Defendant Herling as a third party beneficiary.

[¶18] At some point, the district judge evidently made an oral ruling that she would grant Wyoming Machinery's motion for summary judgment. The date of the hearing at which that ruling was made is not reflected in the record, and there is no transcript of any hearing at which the ruling was made.

[¶19] The parties submitted competing written orders to implement the oral decision. Wyoming Machinery submitted a proposed order which would have awarded it judgment for $1,383,472.93 on October 31, 2011, the same day the federal court entered judgment against JHCI in favor of Tetra Tech. Herling objected, claiming that the $500,000 paid from JHCI's retainage account should be credited against the amount he had been found to owe, that Wyoming Machinery had admitted as much in its statement of material facts, and that the court had made no finding or order as to the amount of the judgment in its

---

[3] The federal court record reflects that some form of relief from the automatic stay was granted by the California bankruptcy court. *Tetra Tech EC, Inc. v. Jerry Herling Construction Inc. & Jerry Herling, an individual*, No. CV-08-2010, Documents 64 and 66 (D. Wyo. Oct. 3, 2011) (minute orders by Hon. William F. Downes).

4

previous oral ruling. He accordingly submitted an order which would have granted Wyoming Machinery judgment against him for $883,472.93.[4]

[¶20]  Herling also moved to rejoin Tetra Tech, which had been dismissed as a result of the settlement.  He filed an affidavit of Cameron S. Walker, who had been counsel for JHCI in the federal case described above.  Mr. Walker attested that Tetra Tech had claimed the $500,000 in the federal case, and submitted an exhibit used at trial by Tetra Tech's forensic accountant to establish its damages.  That document reflected a claim for "Wyoming Machinery (Settlement, Nov 2010) $500,000."  Mr. Walker's affidavit concluded that part of Tetra Tech's judgment against JHCI included the $500,000 Wyoming Machinery is attempting to recover  from Herling  in this case.   Herling contended that Tetra Tech needed to be a party in order to assure that he would not have to pay what Tetra Tech had already recovered against JHCI on his guaranties.

[¶21]  Wyoming Machinery responded that it would be required to repay Tetra Tech up to $500,000 if it ever succeeded in recovering anything over $884,472.93 from Herling because of the terms of its settlement agreement.  The response did not address the effect, if any, of the Tetra Tech judgment against JHCI.

[¶22]  On December 16, 2011, the district court entered a written order on Wyoming Machinery's motion for summary judgment, finding that: (1) Herling's personal guaranties were unambiguous; (2) Herling was not a party to JHCI's assignment of retainage to Wyoming Machinery; and (3) Herling failed to introduce evidence showing a genuine issue of material fact on whether the settlement agreement released Herling from his guaranties. It held that JHCI failed to pay for $1,383,472.93 of equipment and services supplied by Wyoming Machinery, and entered judgment against Herling in that amount based on his guaranties.  It did not address whether the settlement funds came from JHCI's retainage account, the effect of the federal judgment, or what impact either of those issues might have on the amount owed on the personal guaranties.  Herling withdrew his motion to join Tetra Tech because it had become moot in light of the judgment against him.

[¶23]  As noted above, Wyoming Machinery's claims against JHCI were stayed but are evidently still pending.  The court entered final judgment against Herling under Wyoming Rule of Civil Procedure 54(b), which permits final judgment against one party even when claims against other parties have not been fully adjudicated, thus allowing this appeal to proceed.

---

[4] The parties were $546.66 apart as to the correct amount of the judgment if Herling is credited for the $500,000 settlement paid to Wyoming Machinery by Tetra Tech.  This relatively minor disparity was not addressed in this appeal, and both figures are referred to in this opinion as they were by the parties in their briefing and in the record.

## STANDARD OF REVIEW

[¶24]  Our standard of review of an order granting summary judgment has been stated often and is as follows:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling.

*Redland v. Redland*, 2012 WY 148, ¶ 47, 288 P.3d 1173, 1185 (Wyo. 2012) (quoting *Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011)) (citations omitted).

[¶25]  Although one of the issues before us was raised by a pleading styled as a motion to dismiss, it is apparent from the record that it was in substance a cross-motion for summary judgment, and that it was treated as such by the parties and the district court. We will not therefore discuss the standard of review for motions to dismiss.

## DISCUSSION

[¶26]  Releases, assignments, and settlement agreements are all types of contracts[5] subject to our usual rules of contractual interpretation:

---

[5] *See Hall v. Perry*, 2009 WY 83, ¶ 9, 211 P.3d 489, 493 (Wyo. 2009) ("Releases and exculpatory clauses are types of contracts.") (citing *Massengill v. S.M.A.R.T. Sports Medicine Clinic, P.C.*, 996 P.2d 1132, 1135 (Wyo. 2000); *Kelliher v. Herman*, 701 P.2d 1157, 1159 (Wyo. 1985)); *In re Estate of Maycock*, 2001 WY 103, ¶ 10, 33 P.3d 1114, 1117 (Wyo. 2001) ("A settlement agreement is a contract and, therefore, subject to the same legal principles that apply to any contract.") (citing *Matter of Estate of McCormick*, 926 P.2d 360, 362 (Wyo. 1996)); *Boley v. Greenough*, 2001 WY 47, ¶ 11, 22 P.3d 854, 858 (Wyo. 2001) ("Assignments are contracts and are construed according to the rules of contract interpretation.") (citing *Wolter v. Equitable Resources Energy Co., W. Region*, 979 P.2d 948, 951 (Wyo. 1999)).

The primary focus is on determining the intent of the parties to the contract. The initial question is whether the language of the contract is clear and unambiguous. If it is, then the trial court determines the parties' intent from the contract language alone. It does not consider extrinsic evidence, although it may consider the context in which the contract was written, including the subject matter, the purpose of the contract, and the circumstances surrounding its making, all to help ascertain what the parties intended when they made the contract. The trial court then enforces the contract in accordance with the plain meaning its language would be given by a reasonable person. All of these issues–deciding whether a contract is unambiguous, determining the parties' intent from the unambiguous language, and enforcing the contract in accordance with its plain meaning–involve questions of law for the trial court. When we undertake de novo review of the trial court's conclusions of law, we follow the same familiar path.

*Knight v. TCB Const. & Design, LLC*, 2011 WY 27, ¶ 7, 248 P.3d 178, 181 (Wyo. 2011) (quoting *Terris v. Kimmel*, 2010 WY 110, ¶ 7, 236 P.3d 1022, 1025 (Wyo. 2010)) (citation omitted).

## *I. Assignment of Retainage*

[¶27]   Herling resisted Wyoming Machinery's motion for summary judgment by asserting that JHCI's assignment of retainage released him from his personal guaranties, an assertion which was supported by the assignment, his affidavit, and an excerpt of his deposition testimony.  JHCI's retainage assignment provided as follows:

RECITALS:

.   .   .

B. Jerry Herling Construction, Inc. has an outstanding balance owed to Wyoming Machinery Company in the amount of $1,383,472.93 as of September 13, 2008 . . . .

C. Tetra Tech EC, Inc. is in possession of certain funds owed to Jerry Herling Construction, Inc. within the retainage account of Tetra Tech EC, Inc.

D. In connection therewith, Jerry Herling Construction, Inc. desires to transfer and assign to Wyoming Machinery Company, and Wyoming Machinery Company desires to acquire, all of Jerry Herling Construction, Inc.'s right, title and interest in and to any and all retainage funds and other tangible and intangible asserts arising out of the relationship between Jerry Herling Construction, Inc. and Tetra Tech EC, Inc., up to an amount sufficient to pay the entire balanced [sic] owed on Account No. [].

NOW, THEREFORE, for Ten and no/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Jerry Herling Construction, Inc. and Wyoming Machinery Company hereby agree as follows:

AGREEMENT:

1. <u>Assignment</u>. Jerry Herling Construction, Inc. hereby grants, transfers, assigns and sets over to Wyoming Machinery Company all of Jerry Herling Construction, Inc.'s right, title and interest in and to any funds held on its behalf in the Tetra Tech EC, Inc. retainage account and any and all tangible and intangible assets arising out of the relationship between Jerry Herling Construction, Inc. and Tetra Tech EC, Inc. (the "Assigned Property") up to an amount sufficient to pay the entire balanced [sic] owed now or in the future on Account No. [].

.    .    .

3. Jerry Herling Construction, Inc. understands that this assignment in and of itself is not a payment of any amounts owed on Account No. [] and that only receipt of actual funds from Tetra Tech EC, Inc. or Jerry Herling Construction, Inc. will be considered a payment on Account No. []. Jerry Herling Construction, Inc. continues to be liable for all unpaid balances on Account No. [] and Wyoming Machinery Company retains the right to pursue Jerry Herling Construction, Inc. for the same. Wyoming Machinery Company has the right, but not the obligation, to pursue Tetra Tech EC, Inc. for recover[y] of the Assigned Property.

.    .    .

8

[¶28] Herling claims that his execution of JHCI's assignment of its interest in the retainage funds operated as a release of his personal guaranties. He acknowledges that the plain language of the assignment did not release JHCI, but contends that its silence with regard to releasing him personally means that he was in fact released. He also claims that his purported release from his guaranties was the consideration for him to agree to the assignment on JHCI's behalf. He argues that this defense is also supported by representations by a managerial employee of Wyoming Machinery, who he claims told him that he would not be sued on his guaranties if JHCI assigned its interest in the retainage.

[¶29] Herling filed an affidavit which stated as follows:

> 2. Wyoming Machinery Company ("WMC"), through its employees and representatives, agreed that it would release me from liability on my personal guarantee if I caused JHCI to assign its retention under the Tetra Tech contracts.
>
> 3. JHCI assigned to WMC its retention under the Tetra Tech contracts in exchange for that release from my personal guarantee for the debts of JHCI. I relied upon such representation by WMC and its representatives in causing the assignment to be made.

[¶30] We have often stated that conclusory statements are insufficient to generate a genuine issue of material fact. *Creel v. L & L, Inc.*, 2012 WY 124, ¶ 50, 287 P.3d 729, 744 (Wyo. 2012) (citing *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo. 1987)). Herling's affidavit is clearly conclusory–it does not identify the employees who are claimed to have agreed to release him personally or the terms of the agreement. It reflects what he claims was his motivation or understanding, but it does not set forth specific facts which would support the conclusions asserted. The affidavit is insufficient to generate a genuine issue of material fact.

[¶31] Herling's deposition testimony about the conversation is somewhat more specific:

> Q: Okay. At some point did you talk with Wyoming Machinery about assigning your interest to the retainage –
>
> A: Yes.
>
> Q: – on the project? Tell me about those conversations.
>
> A: Well, I was – I was trying to help Wyoming Machinery, working directly with Arik [Arik Christensen, Wyoming

Machinery's Credit and Collections Manager], to try to get his money. And – and, you know, I actually – I actually called them up and asked, "Hey, you know, we" – you know, "What are we going to do here?" you know.

And he – he said that his attorney was working on something and to come over to his office.

So I went over to his office and he had this Assignment of – of Retention. And I kind of asked, "Well, what's this?"

He goes, "Well, lien rights are really kind of" – "you know, kind of" – "kind of rough in Wyoming, and this is a way for him to get his money."

I said, Well, you know" – "you know, I don't want to get sued. I don't want my company to get sued; I don't want to get sued personally. I don't want any of that."

And he – and his attorney – the attorney was a – it was a lady I was talking to, I believe, that was on the phone at that – she was on the phone.

And I wanted an explanation of this. I said, "Well, I don't want to be sued."

And it's like, "Well, if you sign this Assignment of Retention, you won't be sued." And I signed that – that Assignment of Retention.

Q: Who made that statement? Was it the attorney or was it Arik?

A: I – I believe it was Arik. I believe it was this – "You sign this" – This is a way so we don't have to sue you," assigning the – the – the retention, which it was almost $2 million in retention in there, and it would have covered his bill sufficiently.

[¶32] Herling argues that he raised genuine issues of material fact as to whether he was released from his guaranties based on the language of the assignment when viewed in conjunction with the above testimony, and that the district court therefore erred in entering summary judgment for Wyoming Machinery.

[¶33] We must first determine whether the assignment was ambiguous. "An ambiguous contract is an agreement which is obscure in its meaning because of indefiniteness of expression or because of a double meaning being present." *Farr v. Link*, 746 P.2d 431, 433 (Wyo. 1987) (citing *E & E Mining, Inc. v. Flying "D" Group, Inc.*, 718 P.2d 58 (Wyo. 1986)). JHCI assigned Wyoming Machinery its interest in retainage funds held by

10

Tetra Tech up to the amount JHCI owed to Wyoming Machinery. JHCI also agreed that the assignment did not constitute payment of any amounts owed on the account, and that only receipt of actual funds from Tetra Tech would constitute a payment on JHCI'S account. No payments were ever made as a result of the assignment.

[¶34] Herling was not a party to the assignment; he executed it on behalf of JHCI. The assignment is neither ambiguous nor obscure, and the material facts surrounding its execution are undisputed.

[¶35] When there is no ambiguity in a written agreement, we determine the parties' intent from the language of the contract alone. *See Knight*, ¶ 7, 248 P.3d at 181; *In re Mark E. Dowell Irrevocable Trust # 1*, 2012 WY 154, ¶ 18, 290 P.3d 357, 361 (Wyo. 2012). ("[A] court should not resort to extrinsic or parol evidence or rules of contract construction to avoid or enlarge the clearly expressed intent of the parties.") (citation omitted). Also, "where the contract is entirely silent as to a particular matter, the courts will exercise great caution not to include in the contract, by construction, something which was intended to be excluded." *N. Ohio Traction & Light Co. v. State of Ohio ex rel. Pontius*, 245 U.S. 574, 590, 38 S. Ct. 196, 201, 62 L. Ed. 481 (1918) (Clarke, J., dissenting) (quoting *E. Ohio Gas Co. v. City of Akron*, 90 N.E. 40 (Ohio 1909)). "Mere silence as to [a] claim cannot be construed to constitute a release thereof." *City Nat'l Bank of Huron, S.D., v. Fuller*, 52 F.2d 870, 877 (8th Cir. 1931).

[¶36] The assignment does not by its clear terms release Herling from his guaranties. If the parties to the assignment had intended to release Herling from his personal guaranties, language to accomplish that end could easily have been included.

[¶37] We have held that a court may "confirm its understanding of otherwise seemingly unambiguous language by reviewing evidence which, although extrinsic to the contract, complements that language by clarifying the context in which the agreement was drawn." *Mark E. Dowell Irrevocable Trust*, ¶ 18, 290 P.3d at 361 (citing *Knight*, ¶ 7, 248 P.3d at 181). Herling's testimony, even when viewed in the light most favorable to him as it must be on a motion for summary judgment, does not raise a genuine issue of material fact as to the meaning of the release itself. It is apparent from the excerpt quoted above that the term "you" was never defined, and that the word was as probably used to refer to JHCI as to Herling personally, although Herling also claims to have spoken of avoiding a personal lawsuit.

[¶38] Beyond that, the testimony does not suggest that the Wyoming Machinery representative told Herling that the company would release him from his personal guaranties–he only indicated that Herling would not be sued, without specifying a time frame. Finally, as already noted, the assignment itself does not release JHCI from its contractual obligations, although JHCI would be credited for payments by Tetra Tech if any were made under the assignment. The testimony suggests no reasonable explanation

for Wyoming Machinery to decline to release JHCI while releasing Herling, an evidently solvent guarantor.

[¶39] Moreover, there is no indication in the record that Herling is unable to read or that the contents of the assignment were misrepresented to him. We have held that a person signing a document is presumed to have read and understood its contents:

> The rule is that the one who signs a paper, without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents . . . .

*Laird v. Laird*, 597 P.2d 463, 467 (Wyo. 1979) (quoting *Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 481 (Mo. 1972)). This is especially true where, as in this case, both parties to a commercial contract are "sophisticated business people . . . [who] have a duty to read the contract carefully." *See Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998). Herling was the CEO of companies with several decades of excavating experience, including approximately one hundred wind farm projects.

[¶40] The district court correctly analyzed the record and properly held that there were no genuine issues of material fact and that the assignment did not release Herling from his guaranties as a matter of law. *See Sturman v. First Nat'l Bank*, 729 P.2d 667, 677 (Wyo. 1986) ("Summary judgment is proper where the language of an agreement is plain and unambiguous."); 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.25[1][a] (3d ed. 2011) (summary judgment is particularly appropriate where a claim or defense is predicated on the interpretation of an unambiguous contract).

## II. *Waiver, Promissory Estoppel, and Accord and Satisfaction*

[¶41] Herling also claims that the oral statements of the Wyoming Machinery representative released him from his guarantee by virtue of the doctrines of waiver, promissory estoppel, and accord and satisfaction in support of his arguments. He refers us only to the basic "black-letter law" of those doctrines, and does not attempt to relate the applicable law to the facts of his case. In a similar case, we observed as follows:

> An appellant is required to present this court with relevant authority and cogent argument. It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there. The appellant, at a minimum, must attempt to relate the rule of law he depends upon to the facts of his case.

*Elder v. Jones*, 608 P.2d 654, 660 (Wyo. 1980); *see also* W.R.A.P. 7.01(f)(1) (requiring an appellant's brief to set forth the "[a]ppellant's contentions with respect to the issues presented"); *BB v. RSR*, 2007 WY 4, ¶ 16, 149 P.3d 727, 734 (Wyo. 2007) ("Mother's vague assertions unsupported by citation to the record do not comply with the requirements of W.R.A.P. 7.01(f)(1) and, therefore, we need not consider her contention."); *Dechert v. Christopulos*, 604 P.2d 1039, 1045 (Wyo. 1980) ("An argument which is not briefed according to our rules of appellate procedure will not be considered.").

[¶42]  Although we would be justified in moving on to other issues after this limited analysis, we will comment briefly on the merits for the sake of completeness.  "[T]he elements of waiver are (a) existing right; (b) knowledge of that right; and (c) intent to surrender or relinquish it." *Ramirez v. Metropolitan Life Ins. Co.*, 580 P.2d 1136, 1138 (Wyo. 1978).  Nothing in Herling's deposition testimony suggests any intent on the part of Wyoming Machinery to release him from his guaranties, and the express language of the assignment demonstrates that although Wyoming Machinery would credit JHCI for any funds actually paid out of retainage, the assignment itself was not a release.

[¶43]  The elements of promissory estoppel are:

> (1) the existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee;  (2) proof that the promisee acted to its detriment in reasonable reliance on the promise;  and (3) a finding that injustice can be avoided only if the court enforces the promise.

*Redland*, ¶ 91, 288 P.3d at 1194 (quoting *Parkhurst v. Boykin*, 2004 WY 90, ¶ 21, 94 P.3d 450, 460 (Wyo. 2004)).

[¶44]  The record raises no genuine issue of material fact with regard to any of the elements of promissory estoppel.  There was no "clear and definite promise" to release Herling from his guarantee.  There is no proof that Herling acted to his detriment–in fact, the assignment kept Wyoming Machinery from withdrawing its equipment for a short time, benefiting JHCI and probably Herling as well.  Finally, it is impossible to find that any injustice was done to Herling, as he gave up nothing by executing the assignment on behalf of JHCI.  Tetra Tech refused to honor it, meaning that JHCI's retainage remained its possession.

[¶45] Finally, the elements of a common law accord and satisfaction[6] are:

> (1) that a bona fide dispute existed as to the amount owed that was based on mutual good faith; (2) that the debtor tendered an amount to the creditor with the intent that payment would be in total satisfaction of the debt; and (3) that the creditor agreed to accept the payment in full satisfaction of the debt.

*Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1068 (Del. 1997) (footnote omitted). There are no genuine issues of material fact as to any of these elements. The amount JHCI owed Wyoming Machinery was not disputed, and neither was the validity of Herling's guaranties. The assignment was clear that it did not operate as a release of any obligation except to the extent that funds were paid to Wyoming Machinery.

[¶46] For these reasons, we conclude that there were no genuine issues of material fact as to Herling's assertion of the defenses of waiver, promissory estoppel, and accord and satisfaction, and Wyoming Machinery was entitled to judgment as a matter of law, as the district court held.

### III. Settlement Agreement

[¶47] Herling also contends that the settlement between Tetra Tech and Wyoming Machinery released him from all claims on his personal guaranties. This is a different argument than his claim that the $500,000 paid by Tetra Tech should reduce the judgment against him by that amount.

[¶48] The procedural presentation of the defense analyzed in this portion of the opinion is somewhat confusing and warrants some clarification. Herling moved to dismiss Wyoming Machinery's complaint based on the settlement agreement between Tetra Tech and Wyoming Machinery, attaching a copy of the agreement to the motion. It is unclear what category of Wyoming Rule of Civil Procedure 12(b) Herling was attempting to rely upon, and none of the categories include the grounds stated in the motion. It is clear, however, that the motion relied on matters outside the pleadings (the settlement agreement), and so it should have been treated as a motion for summary judgment. W.R.C.P. 56(b). We believe that it was in fact so treated by the parties and the district court, and we will therefore address it as a cross-motion for summary judgment. *See Alm v. Sowell*, 899 P.2d 888, 890–91 (Wyo. 1995) (holding that a motion to dismiss was properly converted to a motion for summary judgment because the plaintiff received ample notice of the conversion and raised no objections).

---

[6] For the law governing accord and satisfaction by the use of an instrument, *see generally* Wyo. Stat. Ann. § 34.1-3-311 (LexisNexis 2011).

[¶49] An order denying a motion for summary judgment is interlocutory and not generally appealable. *McLean v. Hyland Enterprises, Inc.*, 2001 WY 111, ¶ 17, 34 P.3d 1262, 1267 (Wyo. 2001). However, denial of a motion for summary judgment is appealable if it is coupled with a grant of a motion for summary judgment, as is the case here. *Id.*; *Lieberman v. Wyoming.com LLC*, 11 P.3d 353, 356 (Wyo. 2000). We may therefore properly review the district court's denial of Herling's motion in this appeal.

[¶50] The settlement agreement between Tetra Tech, Safeco, and Wyoming Machinery provided as follows:

> **RECITALS:**
>
> .   .   .
>
> 10.    Through this Agreement, the Parties wish to:
>
> a. Resolve any and all disputes between them regarding payment for Wyoming Machinery's equipment, services, parts or transportation costs relating to the Projects, and any claims Wyoming Machinery may otherwise assert against the Projects;
>
> b. Dismiss all claims against Tetra Tech and Safeco in the Natrona Lawsuit;
>
> .   .   .
>
> d. Assign from Wyoming Machinery to Tetra Tech a portion of JHCI's debt and Herling's guarantee of that debt to Wyoming Machinery, in a portion equivalent to the consideration paid by Tetra Tech under this Agreement;
>
> e. Obtain Wyoming Machinery's covenant not to sue or assert any claim against Tetra Tech relating to the Assignment executed by JHCI on or about September 16, 2008, along with related representations and agreements; and,
>
> .   .   .
>
> **AGREEMENT**
>
> .   .   .
>
> 11.    In exchange for the executed documents required by this Agreement, Tetra Tech shall pay Wyoming Machinery, through a regular company check, the amount of $500,000.00 (the "Settlement Amount"). The Settlement Amount reflects

full and final payment of all funds due Wyoming Machinery for its equipment, services, parts or transportation costs relating to the Projects.

12.  In exchange for the Settlement Amount, Wyoming Machinery, through its counsel or other fully authorized officer, shall execute and deliver to Tetra Tech's counsel, the following documents which are incorporated in this Agreement by reference:

.   .   .

e.  Wyoming Machinery's Partial Assignment of Claim Against JHCI and Jerry Herling, in the form attached as **Exhibit E**.

.   .   .

14.  Wyoming Machinery, for itself and its successors and assigns, hereby covenants not to sue Tetra Tech, and waives and releases any and all claims against Tetra Tech, related to the "Assignment of Interest" executed by Jerry Herling Construction on September 16, 2008 . . . .

.   .   .

15.  With respect to the Natrona Lawsuit, Wyoming Machinery hereby agrees as follows:

i.  Wyoming Machinery shall not dismiss, waive, compromise or settle any claim asserted or judgment obtained against Jerry Herling in the Natrona Lawsuit without giving Tetra Tech 15 days advance notice of Wyoming Machinery's intent to do so and the terms of any such dismissal, waiver, compromise or settlement.

ii.  Wyoming Machinery shall pay to Tetra Tech all amounts paid by or on behalf of Jerry Herling to Wyoming Machinery as a result of any settlement or judgment in the Natrona Lawsuit to the extent those payments exceed the amount of any judgment entered in favor of Wyoming Machinery against Jerry Herling less the amount paid by Tetra Tech to Wyoming Machinery under this Agreement.  In the event Wyoming Machinery reaches a settlement with Jerry Herling, Wyoming Machinery and Tetra Tech agree to negotiate an agreed-upon amount of Wyoming Machinery's

claim, and to engage in binding mediation of such amount, if unable to agree.

iii.      Wyoming Machinery agrees to file a motion for summary judgment on its claims against Jerry Herling in the Natrona Lawsuit on or before February 1, 2011.

. . .

[¶51]  Herling claims that the settlement agreement released both JHCI's liability and his personal guaranties as a matter of law.  He acknowledges that neither he nor JHCI were parties to the settlement agreement.   However, he relies upon paragraph 11 of the agreement, which states that the settlement amount reflects full and final payment of all funds due Wyoming Machinery, and the fact that the agreement requires an assignment of part of Wyoming Machinery's claim against JHCI and Herling to Tetra Tech.  He contends that the district court therefore erred when it found that he was not released from his guaranties.[7]

[¶52]  Like the assignment discussed above, we review the settlement agreement according to our usual principles of contract interpretation.  A "cardinal principle" in our review of contracts is that "a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 115 S. Ct. 1212, 1219, 131 L. Ed. 2d 76 (1995) (citation omitted).   We presume that "each particular provision is placed in a contract for a purpose," and "therefore  avoid constructions  which would render a provision meaningless." *Treemont, Inc. v. Hawley*, 886 P.2d 589, 594 (Wyo. 1994) (citation omitted).  Herling urges us to read the assignment provision of the settlement agreement as a complete release of his obligations, contending that "[t]he debt and the guarantee [sic] no longer belonged to Wyoming Machinery. Finding any other way would make a number of the provisions in the settlement agreement meaningless."

[¶53]  Wyoming Machinery only agreed to a dismissal of all claims against Tetra Tech and Safeco.  It did not agree to release its claims against Jerry Herling and JHCI.  In fact, the settlement agreement specifically required Wyoming Machinery to pursue its claims against Herling and not to settle them without advance notice to Tetra Tech.  Read in context, the phrase "full and final payment of all funds due Wyoming Machinery for its equipment, services, parts or transportation costs relating to the Projects" clearly refers to

---

[7] Herling does not challenge the district court's finding that he was not a third-party beneficiary of the agreement, and we therefore decline to consider that aspect of the court's ruling. *See Ferrell v. Knighten*, 2013 WY 37, ¶ 12, 298 P.3d 161, 163 (Wyo. 2013) ("Since Ultra failed in its opening brief to designate or argue the issue of the propriety of the holding by the district court that it contractually waived its right to seek judicial review of the arbitration award, the holding is uncontested." (quoting *Ultra Resources, Inc. v. McMurry Energy Co.*, 2004 WY 121, ¶ 13, 99 P.3d 959, 964 (Wyo. 2004))).

all funds due Wyoming Machinery from Tetra Tech, not all funds due Wyoming Machinery from JHCI or Herling.

[¶54] In addition, Wyoming Machinery only agreed to assign $500,000 of its claim to Tetra Tech, making the assignment partial. Whether the assignor of part of a claim may pursue the entire claim is a question discussed below. The clear language of the settlement agreement left Wyoming Machinery with a claim of at least $884,019.59.

[¶55] The construction urged by Herling would render portions of the agreement meaningless and nonsensical. Herling argues, in effect, that Wyoming Machinery intended to settle its claim of approximately $1.38 million for only $500,000, and to give up its right to recover from him when he was not even a party to that agreement. There were no genuine issues of material fact, and the clear language of the agreement did not release Herling from his obligations under the guaranties as a matter of law, as the district court concluded.

## IV. *Amount of the Judgment*

[¶56] Herling contends that Wyoming Machinery's statement of material facts on summary judgment demonstrates that it credited his account for Tetra Tech's $500,000 settlement payment at some point. Herling also claims that the $1,383,472.93 judgment amounts to double recovery because Tetra Tech paid $500,000 to settle with Wyoming Machinery and he was not credited for that payment even though the funds were taken from JHCI's retainage account. He further contends that Tetra Tech recovered a judgment for the $500,000 settlement payment in the separate federal case against JHCI, and that Wyoming Machinery's recovery of a judgment for that amount in this case would be a double recovery. He argues that there were genuine issues of material fact regarding the correct amount of the judgment, and that it was therefore error for the district court to enter judgment against him for the full $1,383,472.93.

[¶57] Wyoming Machinery claims that the settlement with Tetra Tech only resolved its claim that Tetra Tech induced it to provide lien waivers and then refused to pay the funds promised, wrongfully causing Wyoming Machinery to forego actions and remedies it might otherwise have pursued. It is, of course, difficult to understand why Wyoming Machinery would partially assign its claim against JHCI and be obligated to repay Tetra Tech if it collected more than the amount it was owed less $500,000 if the settlement was in fact of an entirely unrelated claim.

### A. Procedural Issues

[¶58] The record on this issue presents two complications beyond those addressed by the parties in their briefing. First of all, as just noted, the settlement agreement provided that Wyoming Machinery would complete a partial assignment of its claim against JHCI and

Herling to Tetra Tech on a document which was attached to the agreement as Exhibit E. Exhibit E is not in the record in either an executed or unexecuted form.

[¶59] If in fact Wyoming Machinery assigned part of its claim against Herling to Tetra Tech, then obviously that portion of the claim belonged to Tetra Tech and not to Wyoming Machinery, even though the agreement required Wyoming Machinery to attempt to collect the $500,000 Tetra Tech had paid and reimburse it to the extent it was successful in recovering more than the $884,019.59 it claimed it was still owed. However, nothing in the settlement agreement prohibited Tetra Tech from using its assignment to try to collect directly from Herling itself. There were therefore two parties who could have pursued collection against Herling simultaneously because of the partial assignment.

[¶60] The general rule regarding collection on partial assignments is set forth in 6 Am. Jur. 2d *Assignments* § 143 (2008):

> ### § 143. Partial assignments
>
> If an assignment of a debt is only partial, it cannot be enforced against the debtor without his or her consent or the joinder in an equitable proceeding of all persons entitled to the various parts of the total debt. Thus, when either the assignor or assignee has sued alone for his or her part of the claim, the defendant may insist that the rule against splitting the cause of action be applied by moving that the owner of the other part of the claim be made a party.

*See also Miller v. Dannie Gilder, Inc.,* 966 S.W.2d 397, 399 (Mo. Ct. App. 1998); *Louisville & N. R. Co. v. Mack Mfg. Corp.,* 269 S.W.2d 707, 709 (Ky. 1954); Restatement (Second) of Judgments § 49 cmt. b (1982).

[¶61] Some of the complexities this appeal presents might have been avoided if Herling had sought joinder of all owners of the claim against him in this case. However, although Wyoming Machinery originally sued for the entire amount of its claim, it then received $500,000 in settlement from Tetra Tech. After that, when it moved for summary judgment, Wyoming Machinery's statement of undisputed facts indicated that it sought to recover $884,019.59, not the full $1,383,472.93 it had originally claimed. This may have been the result of error or inadvertence, but it is not surprising that Herling did not attempt to join Tetra Tech to avoid a double recovery at that point, because it would have appeared to him that Wyoming Machinery only sought to recover the unassigned portion of its claim.

[¶62]   It is true that statements of undisputed facts under W.R.C.P. 56.1 do not establish those facts standing alone.  Rule 56.1 statements are only intended "to identify just what facts are actually in dispute." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). *See also N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting Rule 56.1 statements are "essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of hunt[ing] through voluminous records without guidance from the parties." (internal quotation marks omitted)).  On the other hand, Herling can hardly be faulted for relying on Wyoming Machinery's statement that it sought judgment for $884,019.59 when he responded to the motion for summary judgment.

[¶63]   The order Wyoming Machinery proposed after the oral ruling put Herling on notice that it was seeking recovery of the full $1,383,472.93, and he promptly moved to join Tetra Tech and to argue the impact of the federal court judgment on the amount owed.  His opposition to the motion and request to join Tetra Tech were filed after the hearing at which the district judge orally indicated that she would grant the motion, but they were  both  before the district court when the written order granting summary judgment was entered.

[¶64]   We must determine whether the amount of the award to Wyoming Machinery was correct as a matter of law against this unusual procedural backdrop.

*B. Possible Double Recovery*

[¶65]   We recently discussed the principles governing possible double recoveries in *Dorr v. Smith, Keller & Associates*, 2010 WY 120, 238 P.3d 549 (Wyo. 2010) (*Dorr V*).  In that case, which spanned approximately twenty years and generated five appeals to this Court, Dorr claimed that settlement funds paid by his father and a bank in a separate case should be credited against the judgment against him, and that he was therefore entitled to a partial satisfaction of the judgment.  After holding an evidentiary hearing, the district court disagreed, and that decision was affirmed on appeal.  This Court commented as follows:

> Wyoming law does not favor double recoveries for the same legal injury. A judgment debtor is, therefore, entitled to credit against a judgment for a settlement that pertains to claims included in the judgment, but is not entitled to credit for settlement of claims that were not part of the judgment. The party asserting satisfaction of a judgment has the burden of proof.

The decision about whether a credit against an outstanding judgment should be allowed is controlled by principles of equity.

*Id.* at ¶¶ 23–24, 238 P.3d at 554–55 (citations omitted) (internal quotation marks omitted). *See also Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2nd Cir. 1989) ("[W]hen a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages.");[8] *Bollinger v. Rheem Mfg. Co.*, 381 F.2d 182, 185 (10th Cir. 1967) ("[A]ppellant, who asserted the double recovery, had the burden to show that the settlement and satisfaction of the judgment entered against him would together constitute a double recovery by Rheem for the same losses.").

[¶66]   To the extent Herling argues that the judgment against JHCI in federal court alone entitles him to a credit against the judgment in this case, we disagree.  A creditor may obtain a judgment against both a debtor and a guarantor on the same debt.  Restatement (Second) of Judgments § 49 cmt. a (1982) (early common law rules permitting only one judgment on a joint obligation are obsolete and no longer followed).  A judgment creditor does not automatically receive funds–he merely obtains the right to execute on the assets of a judgment debtor to satisfy his judgment.[9]

[¶67]   Payments made by the judgment debtor or resulting from execution on  his property should be credited against a judgment against a guarantor, and a satisfaction of both judgments should be entered when the debt is paid in full, regardless of who paid the funds.  The modern rule allowing only one satisfaction of multiple judgments on a joint obligation protects against a double recovery.  *Dorr*, ¶ 23, 238 P.3d at 554 ("A judgment debtor is, therefore, entitled to credit against a judgment for a settlement that pertains to claims included in the judgment, but is not entitled to credit for settlement of claims that were not part of the judgment.") (citation omitted); Restatement (Second) of Judgments § 49 cmt. a; § 50(2), cmt. a, cmt. d (1982) (A judgment determining the amount of a joint obligation which is then paid in full by one obligor precludes recovery by the obligee from others jointly liable for the obligation); *id.* at § 50(1)(b) (the general rule of non-preclusion does not apply to the extent of the law of suretyship).

---

[8] *Singer* was a securities fraud case.  The commentary above should not be construed to apply to cases decided under Wyoming's comparative fault statute.  We have held that settlements paid by one tortfeasor are not set off against a judgment against another because each tortfeasor is held to pay only the damages related to his share of fault under Wyoming Statute § 1-1-108.  *Rudy v. Bossard*, 997 P.2d 480, 486–87 (Wyo. 2000).

[9] Of course, judgments also become liens on the judgment debtor's real property.  Wyo. Stat. Ann. § 1-17-302 (LexisNexis 2011).  They may be registered and become liens in other states, depending on the law of the particular state.  *See, e.g.*, Wyo. Stat. Ann. § 1-17-703 (LexisNexis 2011).

21

[¶68]  In the language of the Restatement of Suretyship and Guaranty, the secondary obligor (Herling) has a defense on its obligation to the obligee (Wyoming Machinery) to the extent the underlying obligation has been discharged by performance or satisfaction by the principal obligor (JHCI).  Restatement (Third) of Suretyship and Guaranty § 19(a) (1996).  A guarantor acquires a right of subrogation against the primary obligor for any payments the guarantor makes on the judgment.  *Id.* § 22; Peter A. Alces, *The Law of Suretyship and Guaranty* § 7:1 (2003).   In this case, in which Herling is the majority shareholder of a company in bankruptcy, that right is probably of no value to him.  But stated simply, two separate judgments on a single obligation result in only one satisfaction, and the guarantor has a right to recover whatever he pays to satisfy the judgment from the principal obligor.

[¶69]  If Tetra Tech did in fact recover a judgment for the $500,000 it paid Wyoming Machinery against JHCI in the federal case described above, a fact which is not clear to us, it may never recover anything at all or less than that amount by execution.  A guaranty would be worthless if the rendering of a judgment against the primary obligor would be deemed payment of the underlying obligation.  If any portion of the judgment is ever paid, the effect of payment can be determined in post-judgment proceedings to declare the judgment satisfied as in *Dorr V*.

[¶70]  The real question is whether the $500,000 paid by Tetra Tech from JHCI's retainage account belonged to JHCI or to Tetra Tech.  If it belonged to JHCI, Herling would be entitled to credit for it, because it would have reduced JHCI's obligation to Wyoming Machinery.  If instead it belonged to Tetra Tech by virtue of JHCI's default on its contractual obligations, then it should not be credited against the judgment because Tetra Tech settled part of Wyoming Machinery's claim against JHCI with money it owned and is entitled to recover.  *Dorr*, ¶ 24, 238 P.3d at 555 (principles of equity control decisions regarding credit against an outstanding judgment).

[¶71]  The record contains evidence that JHCI failed to properly perform its contractual obligations and thereby forfeited its right to the retained funds.  Tetra Tech's vice president of project services testified by deposition that his company's subcontracts allowed it to stop payments from retained funds if a subcontractor like JHCI was not paying its suppliers.  If Tetra Tech is correct in its contentions, Herling may not be "entitled to credit for settlement of claims that were not part of the judgment." *Dorr*, ¶ 23, 238 P.3d at 554.  Unfortunately, Tetra Tech's subcontract with JHCI is not a part of the appellate record.  The record does reflect that Tetra Tech paid all of the retained funds to JHCI's suppliers and vendors.

[¶72]  Herling admitted at his deposition that JHCI would only have been entitled to the retained funds after completing the dirt work on the wind farm projects.  However, he also claimed that Tetra Tech breached its agreement with JHCI and prevented it from

22

completing its contract, in which case perhaps the funds rightfully belonged to JHCI for work it had completed. Tetra Tech's accounting records show that JHCI's retainage account was reduced by $500,000 by the payment to Wyoming Machinery. The records in question were attached as an exhibit to Herling's objection to Wyoming Machinery's proposed order submitted under W.R.C.P. 58(a). The Walker affidavit, along with demonstrative exhibits used by Tetra Tech's expert accountant in the federal case, likewise attested that Tetra Tech sought recovery of its $500,000 settlement payment in the federal case, although these documents did not reflect whether these funds were paid from JHCI's retainage account.

[¶73] The affidavit and accounting records would normally have had to have been filed, at the very latest, the day before the hearing on the motion for summary judgment. W.R.C.P. 6(c)(1). However, Herling only received notice that Wyoming Machinery claimed $1,383,472.93 rather than the $884,019.59 in Wyoming Machinery's statement of undisputed facts when it served a proposed order after the hearing. The affidavit and accounting records were before the district court when it entered its order, and Wyoming Machinery did not move to strike them. Given these unusual circumstances, we will consider the accounting records and the Walker affidavit as documents before the district court when summary judgment was granted. *See* W.R.C.P. 6(b) ("When by these rules . . . an act is required or allowed to be done at or within a specified time, the court . . . for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . ."); 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2719 (3d ed. 2005) (stating that Federal Rule of Civil Procedure 6(b), which is similar to its Wyoming counterpart, "gives the judge authority to accept a tardy affidavit when it is appropriate to do so").

[¶74] The jury in the federal case may have determined that Tetra Tech owned the funds in the retainage account by virtue of a breach of contract by JHCI. A decision as to the ownership of those funds may control in this case under principles of issue preclusion or suretyship law. Herling was aware of the claims by Tetra Tech because he was originally a party to and participated in the federal proceedings as JHCI's CEO. *See, e.g., Little v. Pizza Wagon, Inc.*, 432 So. 2d 1269, 1271–72 (Ala. 1983) (guarantor failed to carry his burden of showing no genuine issues of material fact as to the preclusive effect of federal proceedings); *Bartle v. Health Quest Realty VII*, 768 N.E. 2d 912, 919–20 (Ind. App. 2002) (guarantor in privity with debtor bound by judgment against obliger by virtue of collateral estoppel or issue preclusion); *Texas W. Oil & Gas Corp. v. First Interstate Bank of Casper*, 743 P.2d 857, 865 (Wyo. 1987) (principal obligor entitled to a motion to dismiss on grounds of collateral estoppel where plaintiff had obtained an earlier judgment against the guarantor), *adhered to*, 749 P.2d 278 (Wyo. 1988); 38 Am. Jur. 2d *Guaranty*, § 90 (2010) ("A guarantor who had notice of an action brought by the creditor against the principal debtor, and had an opportunity to be heard, is precluded from questioning the debtor's liability.") (citation omitted); 74 Am. Jur. 2d *Suretyship* § 109 (2010).

[¶75]  At oral argument, counsel agreed that this Court could take judicial notice of the federal court proceedings under Wyoming Rule of Evidence 201.  We have referred to that court's record to the extent necessary to determine the timing of the proceedings of the state district court vis-à-vis those of the federal district court.  However, nothing in the record on appeal suggests that the Natrona County District Court had the federal court record available to it.  As already noted above, our review is limited to the record before the district court, and we cannot therefore rely on the federal court record when we review the order granting summary judgment.  *See Redland*, ¶ 47, 288 P.3d at 1185 ("We review a summary judgment in the same light as the district court, using the same materials and following the same standards.") (citation omitted).

[¶76]  The record before the district court does not independently reflect whether the $500,000 paid in settlement by Tetra Tech rightfully belonged to it or to JHCI.  The subcontract between Tetra Tech and JHCI may specify the circumstances under which Tetra Tech was entitled to the retention, but it is not in this record.  All we are able to divine from the record before us, viewing the evidence in the light most favorable to Herling, is that the funds came from JHCI's retainage account, and that there is a dispute as to whether Tetra Tech properly held and used them.

[¶77]  We therefore conclude that Herling has raised genuine issues of material fact as to the ownership of the funds used to pay the Tetra Tech/Wyoming Machinery settlement.  The case must therefore be remanded to determine whether the $500,000 paid by Tetra Tech should be credited to Herling or not.  *Cf. Little*, 432 So. 2d at 1272–73 (reversing and remanding the trial court's grant of summary judgment for development of a more complete record regarding the preclusive effect of federal litigation on the guarantor's liability).  We reach no conclusion as to whether this issue could be resolved on a motion for summary judgment on remand.  The district court may adopt its previous findings regarding the effect (or lack thereof) of the settlement agreement and assignment on Herling's guaranties and limit further proceedings to those necessary to determine the correct amount of the judgment.  *See* W.R.C.P. 56(d).  The parties and the district court may also wish to consider whether Tetra Tech should be joined as a party to determine its rights under the partial assignment, if there was one.

## CONCLUSION

[¶78]  The district court properly concluded that JHCI's assignment of retainage and Wyoming Machinery's settlement agreement with Tetra Tech and Safeco did not release Herling from his personal guaranties as a matter of law.  There are no genuine issues of material fact as to Wyoming Machinery's claim that JHCI owed it $1,383,472.93 and that Herling guaranteed payment of that amount as a matter of law.  However, Herling successfully raised genuine issues of material fact as to the ownership of the funds in JHCI's retainage account with Tetra Tech, and therefore as to whether he was entitled to

credit for the $500,000 settlement. We accordingly reverse and remand for further proceedings to determine the correct amount of the judgment to be awarded to Wyoming Machinery.